RENNER ET AL., APPELLEES, *v.* TUSCARAWAS COUNTY BOARD OF REVISION ET AL., APPELLANTS.

[Cite as Renner *v.* Tuscarawas Cty. Bd. of Revision (1991), 59 Ohio St. 3d 142.]

(No. 90-973—Submitted January 23, 1991—Decided May 1, 1991.)

*Wesp & Osterkamp Co., L.P.A.,* and *E. Joel Wesp,* for appellees.

*Teaford, Rich, Belskis, Coffman & Wheeler* and *Jeffrey A. Rich,* for appellants.

*Per Curiam.* First, as to the jurisdictional question, the board argues that an appellant must file a complete copy of the notice of appeal with it to vest the BTA with jurisdiction. The Renners respond that the documents they filed with the board sufficiently advised the board of the nature and substance of the appeal. We agree with the Renners.

In *Akron Standard Div.* v. *Lindley* (1984), 11 Ohio St. 3d 10, 11 OBR 9, 462 N.E. 2d 419, we applied a substantial compliance test to determine whether to dismiss an appeal for failure to comply with an appellate pro-

cedure statute. If the omitted requirement runs to the core of procedural efficiency, then the requirement is essential, the omission is not substantial compliance with the statute, and the appeal is to be dismissed. In *Akron Standard Div.*, we held that the statutory requirement to verify a use tax assessment petition was not jurisdictional.

Here, the supplemental documents informed the board of the name and address of the appellants, the parcel numbers, the taxing district (contained in the transcript of the hearing before the board), the exact nature of the appeal, and the relief requested. These documents supplied the same information as page two of the notice form. Thus, under *Akron Standard Div.*, the omission of page two did not run to the core of procedural efficiency, the Renners substantially complied with the filing requirements of R.C. 5717.01, and their appeal may be heard.

Next, in the first proposition of law, the board argues that the Renners disqualified the entire numbered permanent parcels from the CAUV program when they converted a portion of them from agricultural use. The board regards the numbered parcel as the only unit for valuation. The Renners, on the other hand, maintain that the unmined portions of the numbered parcels were used exclusively for agricultural purposes. They then argue for application of R.C. 5713.04, which allows for splitting parcels into exempt and non-exempt uses, to split their property into agricultural and nonagricultural valuations.

In *Park Ridge Co.* v. *Franklin Cty. Bd. of Revision* (1987), 29 Ohio St. 3d 12, 29 OBR 231, 504 N.E. 2d 116, we acknowledged that the numbered permanent parcel is an important unit in the auditor's assessing taxes against real estate. Nevertheless, in paragraph two of the syllabus, we stated:

"The true value for real property may well depend on its potential use as an economic unit. That unit may include multiple parcels, or it may be part of a larger parcel, on the auditor's records. The boundaries of that unit may change with time and circumstances. Thus, a separate tract for valuation purposes need not correspond with a numbered parcel. For tax valuation purposes, property with a single owner, for which the highest and best use is a single unit, constitutes a tract, lot or parcel."

Therefore, the auditor can divide the numbered parcel into the economic units contained within a parcel's borders and value each segment individually. This result also comports with R.C. 5713.34. This statute provides:

"Upon the conversion of all or any portion of a tract, lot, or parcel of land devoted exclusively to agricultural use a portion of the tax savings upon *such converted land* shall be recouped as provided for by Section 36, Article II of the Ohio Constitution by levying a charge on *such land* in an amount equal to the amount of the tax savings on the converted land during the four years immediately preceding the year in which the conversion occurs. * * *" (Emphasis added.)

By assessing the recoupment charge on "such converted land" the General Assembly applies this charge only to "all or any portion of a tract, lot, or parcel" that is converted.

Moreover, Ohio Adm. Code 5705-5-01(B)(25) defines "tracts, lots, or parcels" as:

"* * * [A]ll distinct portions or pieces of land (not necessarily contiguous) where the title is held by one owner, as listed on the tax list and duplicate of the county, which are actively farmed as a unit if together the total acreage meets the requirement of

division (A)(1) or (2) of Section 5713.30 of the Revised Code. The terms 'tracts,' 'lots' or 'parcels' may be used interchangeably."

This definition does not restrict "tracts, lots, or parcels" to the numbered parcels which the auditor employs in his assessment functions. This definition joins together all distinct portions or pieces of land that are actively farmed as a unit, even if not contiguous, as land to which the CAUV program applies. The definition ignores the boundaries of numbered parcels and recognizes the economic units described in *Park Ridge Co.*

Finally, in its second proposition of law, the board argues that the Renners did not sustain their burden to prove what part was converted to mining and what part continues to qualify for CAUV. The Renners contend that the board has a duty to investigate their complaint under *Bd. of Edn. of Cleveland City School Dist.* v. *Cuyahoga Cty. Bd. of Revision* (1973), 34 Ohio St. 2d 231, 63 O.O. 2d 380, 298 N.E. 2d 125, paragraph one of the syllabus, and that they need only assist the board in locating the agricultural acreage as ordered by the BTA decision. We agree with the board and hold that the Renners have not proven their right to a reduction in the recoupment charge.

To value land at its current agricultural use, the auditor reviews county survey maps and determines the land's soil type and its consequent land capability class from the classes listed in Ohio Adm. Code 5705-5-04(F). Ohio Adm. Code 5705-5-05(D). The auditor then learns the unit value per acre for the property from the "current agricultural use value of land table or tables" prescribed by the Tax Commissioner for the given tax year, pursuant to Ohio Adm. Code 5705-5-04.

The commissioner compiles this table by first calculating the typical net income from agricultural products for each soil type. For this task he assumes typical management, cropping, land use patterns, and yields. Next, the commissioner capitalizes the incomes expected to be derived from each soil type by a rate that he has previously determined. Finally, he lists the unit values per acre so determined in the table and distributes the table to the auditors.

After extracting the unit value per acre from this table, the auditor multiplies it by the acreage stated on the application, deducts and lists separately the value of any residential acreage, and enters the result as the agricultural use land value. Ohio Adm. Code 5705-5-05(K). Thus, the auditor must know which acreage is farmed and its underlying soil type to calculate the land's value.

A taxpayer, moreover, has the duty to prove his right to a reduction in value. *R.R.Z. Associates* v. *Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St. 3d 198, 527 N.E. 2d 874. We reject and, consequently, overrule, as contrary to this well-established principle, paragraph one of the syllabus of *Bd. of Edn. of Cleveland City School Dist.* v. *Cuyahoga Cty. Bd. of Revision, supra,* which obliged boards of revision to investigate independently a valuation complaint.

In the instant case, the Renners did not provide the exact boundaries of the property that qualifies for current agricultural use valuation. Since this value depends so intimately on the exact land under review, the Renners did not establish their right to reduction and, consequently, may not receive a reduction from the assessed recoupment charge.

Accordingly, we reverse the BTA's decision.

*Decision reversed.*

MOYER, C.J., SWEENEY, DOUG-
LAS, WRIGHT, H. BROWN and RES-
NICK, JJ., concur.

HOLMES, J., dissents.

HOLMES, J., dissenting. I dissent. I
would affirm the Board of Tax Appeals
in all respects.