[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 591.]

CLEVELAND ELECTRIC ILLUMINATING COMPANY, APPELLANT, *v.* LAKE
COUNTY BOARD OF REVISION ET AL., APPELLEES.

DUQUESNE LIGHT COMPANY, APPELLANT, *v.* LAKE COUNTY BOARD OF
REVISION ET AL., APPELLEES.

TOLEDO EDISON COMPANY, APPELLANT, *v.* LAKE COUNTY BOARD OF
REVISION ET AL., APPELLEES.

CLEVELAND ELECTRIC ILLUMINATING COMPANY, APPELLANT, *v.* LAKE
COUNTY BOARD OF REVISION ET AL., APPELLEES.

PENNSYLVANIA POWER COMPANY, APPELLANT, *v.* LAKE COUNTY BOARD OF
REVISION ET AL., APPELLEES.

OHIO EDISON COMPANY, APPELLANT, *v.* LAKE COUNTY BOARD OF REVISION
ET AL., APPELLEES.

[Cite as *Cleveland Elec. Illum. Co. v. Lake Cty. Bd. of Revision*,
1998-Ohio-179.]

*Taxation—Electric utilities—Real property valuation—Requirements of R.C.
5715.13 and 5715.19 substantially complied with in complaint to county
board of revision seeking decrease in valuation of property, when.*

(Nos. 96-38, 96-39, 96-40, 96-41, 96-42 and 96-43—Submitted March 19,
1997—Decided January 7, 1998.)

APPEALS from the Board of Tax Appeals, Nos. 95-K-849, 95-K-848, 95-K-843,
95-K-842, 95-K-841 and 95-K-840.

————————

{¶ 1} On March 31, 1995, appellants, the Cleveland Electric Illuminating
Company (case No. 96-38) and the Duquesne Light Company (case No. 96-39),
each filed a real property valuation complaint with the Lake County Board of
Revision ("BOR") for tax year 1994. The complaints involved the real property

associated with a fossil-fuel-powered generating plant known as the Eastlake Plant, which is located in the Willoughby-Eastlake School District.

{¶ 2} Also on March 31, 1995, appellants, the Toledo Edison Company (case No. 96-40), the Cleveland Electric Illuminating Company (case No. 96-41), the Pennsylvania Power Company (case No. 96-42), and the Ohio Edison Company (case No. 96-43), each filed two real property valuation complaints with the BOR for tax year 1994. One complaint from each company related to real property in the North Perry Village taxing district, while the other complaint related to adjoining real property in the Perry Township taxing district. All of these complaints concerned real property associated with a nuclear-powered generating plant known as the Perry Plant, which is located in the Perry Local School District.

{¶ 3} The local school districts filed countercomplaints against each complaint. The Willoughby-Eastlake School Board sought no increase in the county auditor's value for the Eastlake Plant. However, the Perry Local School District sought an increase in the tax value for all the real property of the Perry Plant. All the foregoing cases have been consolidated for a hearing and decision by this court.

{¶ 4} The issues raised by these cases relate to the manner in which the appellants (collectively referred to as "CEI") answered the questions set forth on the form entitled "Complaint on the Assessment of Real Property" (the "complaint" or "DTE Form 1"). Questions 7 and 8 on DTE Form 1 are the questions at issue in this case.

{¶ 5} The preface to Question 7 on DTE Form 1 reads as follows: "Statement of Value: The complainant must set forth the amount of increase or decrease in taxable value that is sought." Question 7(A) asks the complainant to set forth its opinion of the true value (fair market value) of its real property. Question 7(B) asks the complainant for its opinion of the taxable value of the real property (thirty-five percent of true value). In response to both questions 7(A) and

7(B) CEI answered "unknown at present." Question 7(D) on DTE Form 1 asks the complainant to state the "increase or decrease in total taxable value sought." In response to Question 7(D), CEI answered "decrease of at least $50,000."

{¶ 6} Question 8 on DTE Form 1 asks the complainant to state that "the increase or decrease in taxable value requested is justified for the following reasons." CEI's response to that question was "To be determined."

{¶ 7} The school boards filed motions with the BOR seeking to have the complaints dismissed for lack of jurisdiction. The school boards alleged that CEI's responses on the DTE 1 form were insufficient to confer jurisdiction on the board of revision.

{¶ 8} After both parties had filed briefs, but without a hearing, the BOR dismissed the complaints for want of jurisdiction. CEI appealed the dismissals to the Board of Tax Appeals ("BTA"). At the BTA, the BOR moved to dismiss the appeals, stating that at the BOR, CEI had failed to state "the amount at which Taxpayers believed the property should be valued" and "the reasons supporting such a reduction." The BTA affirmed the BOR's dismissal of the complaints. The BTA relied on this court's decision in *Stanjim Co. v. Mahoning Cty. Bd. of Revision* (1974), 38 Ohio St.2d 233, 67 O.O.2d 296, 313 N.E.2d 14, which held that the information solicited on the DTE Form 1 is required by statute to be provided and that a taxpayer's failure to provide the information leaves the local board of revision without jurisdiction to consider the complaint. CEI filed these appeals as of right.

{¶ 9} This cause is now before this court upon appeals as of right.

_____

*Charles E. Coulson*, Lake County Prosecuting Attorney, and *Michael P. Brown*, Assistant Prosecuting Attorney, for appellees Lake County Auditor and Lake County Board of Revision.

*George R. Hicks, Jr.*; *Squire, Sanders & Dempsey, Robin G. Weaver, Bebe A. Fairchild* and *Ted B. Clevenger*, for appellants Toledo Edison Company,

Cleveland Electric Illuminating Company, Pennsylvania Power Company, Duquesne Light Company, and Ohio Edison Company.

*Wayne E. Petkovic*, for appellees Perry Local Schools Board of Education and Willoughby Eastlake Board of Education.

_____

**PFEIFER, J.**

**{¶ 10}** We find that the appellants in these cases substantially complied with the requirements of R.C. 5715.13 and 5715.19 in seeking a decrease in the valuation of their property, and we therefore overrule the determinations of the Board of Tax Appeals.

**{¶ 11}** The BTA based its decision against CEI on *Stanjim Co. v. Mahoning Cty. Bd. of Revision* (1974), 38 Ohio St.2d 233, 236, 67 O.O.2d 296, 298, 313 N.E.2d 14, 16, wherein this court found that the DTE Form 1 *in use at that time* was "clearly designed to elicit information required by R.C. 5715.19 and 5715.13," and that a complaint lacking certain information required by the form is insufficient to confer jurisdiction on a county board of revision.

**{¶ 12}** In *Stanjim*, the taxpayer had left a large portion of the form, entitled "Pertinent Facts," completely blank. That portion of the form was designed to elicit the information required by R.C. 5715.13, which reads:

"The county board of revision shall not decrease any valuation complained of unless the party affected thereby or his agent makes and files with the board a written application therefor, verified by oath, showing the facts upon which it is claimed such decrease should be made."

**{¶ 13}** Instead of providing information, the *Stanjim* taxpayers had typewritten, "All other pertinent data substantiating this complaint of over valuation will be presented at requested hearing." The BOR in *Stanjim* dismissed the complaints because they did not comply with the requirements for filing, and that decision was affirmed by the BTA and this court.

{¶ 14} But forms have changed. A review of the current DTE Form 1 (Exhibit A [Exhibit A is not included in the INTERNET VERSION of this case]) shows that the primary difference between the current form and the complaint form used in *Stanjim* is that the Pertinent Facts section contained in the *Stanjim* form (Exhibit B [Exhibit B is not included in the INTERNET VERSION of this case])) has been *dropped*. The Tax Commissioner apparently has determined that the information contained in the Pertinent Facts section of the *Stanjim* form is no longer required. One possible explanation for dropping the Pertinent Facts section is the amendment in 1965 of R.C. 5713.03, which requires the auditors to adopt and use a real property record. 131 Ohio Laws 1329. Although R.C. 5713.03 was amended prior to the *Stanjim* case (decided in 1974) it was not until December 1973 that the Tax Commissioner amended rule BTA-5-05 (now Ohio Adm.Code 5705-3-05) to specify the type of data that was to be kept on the property record.

{¶ 15} The data kept on the property record card includes such information as the size of the parcel, utilities, building details, the date and price of any transfers, and rental income. Today, if the auditor complies with the property record card requirements, most of the relevant data requested by the Pertinent Facts section of the *Stanjim* form is now recorded on the property record card in his or her possession.

{¶ 16} In addition, the second page of the current DTE Form 1 sets forth that if the property owner is seeking a decrease for income-producing, commercial, or industrial property, he must submit additional information "no later than at the time of the hearing," relating to physical data for the property, income data for rental property, and other data such as zoning and a floor plan.

{¶ 17} *Stanjim* hinged on the taxpayer's failure to fill out the "Pertinent Facts" portion of the DTE Form 1. That section is missing from the current form, and only a few questions remain that are similar to those on the *Stanjim* form. Question 9, for instance, asks whether the property had been sold in the last three

years, and Question 10 asks for a copy of the listing agreement. Question 11 asks for the dates and amounts of capital improvements over the prior three years. CEI responded to each of those questions.

{¶ 18} The BTA found CEI to be in noncompliance with R.C. 5715.13 due to its response to Question 8, which requires the complainant to state that "the increase or decrease in taxable value requested is justified for the following reasons." CEI's response to that question was "To be determined."

{¶ 19} No specific, verifiable information is requested in Question 8. It seeks not so much fact as opinion or theory. In this case, appellants fully answered the factual questions that remained from the *Stanjim* form; much of the other information sought by the *Stanjim* form is now contained in the property record held by the auditor.

{¶ 20} We find that Question 8 of the DTE Form 1 used in this case does not elicit information required by R.C. 5715.13. The *Stanjim* court characterized the data requirements of R.C. 5715.13 and 5715.19 as "minimal." *Stanjim*, 38 Ohio St.2d at 236, 67 O.O.2d at 299, 313 N.E.2d at 16. Question 8 does not seek data, it seeks an argument. As such, it seeks much more than the minimal amount of information required by the *Stanjim* form. We find that R.C. 5715.13 does not require a response to Question 8 on the DTE Form 1 used in this case.

{¶ 21} The BTA also found that CEI did not meet jurisdictional requirements of R.C. 5715.19(D), which requires a complaint to state "the amount of overvaluation, undervaluation, discriminatory valuation, illegal valuation, or incorrect classification or determination upon which the complaint is based."

{¶ 22} Question 7 of the DTE Form 1 concerns valuation. Part (A) of that question requests the complainant's opinion of true value (fair market value) of the property. CEI responded "unknown at present." Question 7(B) requests the complainant's opinion of total taxable value, which is simply thirty-five percent of true value. Having answered "unknown" as to part A, CEI left Question 7(B) blank.

Question 7(C) asks for the current total taxable value, and CEI responded with figures ranging from $75,500 to $49,725,180. Question 7(D) asks for the "increase or decrease in total taxable value sought." In their complaint, CEI asked for a "decrease of at least $50,000."

{¶ 23} CEI's responses to Question 7 were somewhat vague, but were not a complete omission. For example, by demanding a decrease of at least $50,000 in total taxable value, and given the property's current taxable value (thirty-five percent of true value) of $49,725,150 (parcel No. 05A-888-0-00-100-0), CEI opines that the taxable value of the property is no more than $49,675,180. Since the taxable value is thirty-five percent of true value, CEI's opinion of the *maximum* true value of the property therefore would be $141,929,086. Thus, save a few simple mathematic computations, CEI's opinion of true value was contained in its complaint. The question remains, however, whether giving a "ceiling" figure is enough to satisfy the requirements of R.C. 5715.19(D).

{¶ 24} There is no requirement that the value of the property, as determined by the board of revision, must match the opinion of value set forth in the complaint. In *Jones & Laughlin Steel Corp. v. Lucas Cty. Bd. of Revision* (1974), 40 Ohio St.2d 61, 69 O.O.2d 353, 320 N.E.2d 658, this court considered whether in an appeal to a court of common pleas (in lieu of an appeal to the BTA) from a decision of the board of revision, the court could find a value which was lower than that claimed by the taxpayer in its complaint filed with the board of revision. The argument raised in *Jones & Laughlin* was that by setting a value in the complaint filed with the board of revision, the taxpayer made an admission that the real estate in question had the value stated in the complaint. This court rejected that argument and stated that in determining value the complaint "places neither minimum nor maximum limitations on the court's determination of value, and there are none save the judicial requirement that the determination be supported by the evidence." *Id*. at 63, 69 O.O.2d at 354, 320 N.E.2d at 660.

**{¶ 25}** Thus, since a taxpayer is not bound to his opinion of value in the complaint, a ceiling value fits within the requirements of R.C. 5715.19(D). Our only remaining concern is whether a ceiling figure upsets the procedural efficiency of the tax appeal process.

**{¶ 26}** In *Akron Std. Div. v. Lindley* (1984), 11 Ohio St.3d 10, 11 OBR 9, 462 N.E.2d 419, this court enunciated a "core of procedural efficiency" standard regarding substantial compliance with a tax statute as it related to the requirements of a reassessment petition. In *Akron Standard*, this court held that lack of a statutorily mandated verified signature was not a basis for dismissing a reassessment petition:

"The lack of a verified signature in a reassessment petition does not prevent the attachment of jurisdiction by an otherwise satisfactory filing, since substantial compliance with the requirements of the statute has taken place. The verification requirement is to be distinguished from the requirement that a notice of appeal be filed within thirty days of assessment, and also from the requirement that the order of the commissioner be included in the notice of appeal. The latter two requirements are essential in that they run to the core of procedural efficiency." *Akron Standard*, 11 Ohio St.3d at 12, 11 OBR at 10, 462 N.E.2d at 420.

**{¶ 27}** In *Renner v. Tuscarawas Cty. Bd. of Revision* (1991), 59 Ohio St.3d 142, 572 N.E.2d 56, a property valuation case, this court explained the *Akron Standard* decision:

"If the omitted requirement runs to the core of procedural efficiency, then the requirement is essential, the omission is not substantial compliance with the statute, and the appeal is to be dismissed." *Renner*, 59 Ohio St.3d at 144, 572 N.E.2d at 57.

**{¶ 28}** Where an insufficient opinion of valuation might adversely affect procedural efficiency is in regard to the operation of R.C. 5715.19(B), the section which sets forth most of the procedural elements regarding a protest of valuation.

Among other things, R.C. 5715.19(B) requires that notice be made to certain other interested parties should the amount of overvaluation exceed $17,500. The statute reads:

"(B) Within thirty days after the last date such complaints may be filed, the auditor shall give notice of each complaint in which the stated amount of overvaluation, undervaluation, discriminatory valuation, illegal valuation, or incorrect determination is at least seventeen thousand five hundred dollars to each property owner whose property is the subject of the complaint, if the complaint was not filed by such owner, and to each board of education whose school district may be affected by the complaint. Within thirty days after receiving such notice, a board of education or a property owner may file a complaint in support of or objecting to the amount of alleged overvaluation, undervaluation, discriminatory valuation, illegal valuation, or incorrect determination stated in a previously filed complaint or objecting to the current valuation. Upon the filing of a complaint under this division, the board of education or the property owner shall be made a party to the action."

{¶ 29} R.C. 5715.19(B) sets the timetable for the prosecution of the case. It also sets the stage for the battle at the heart of most valuation cases—the school board's determination that the property is not overvalued. Within thirty days after the last possible filing date, the auditor informs the school board of a complainant's claim of overvaluation, if the claimed overvaluation is at least $17,500. This is a key point for the orderly administration of an overvaluation claim. The statute, in requiring notice to school boards, identifies them as an integral part of the determination of a claim. Anything that would affect that notice being given, therefore, goes to the core of procedural efficiency. Thus, certainly, any response to claimed valuation which does not make clear whether notice to the school board is necessary is necessarily insufficient. It is the triggering of that notice that goes

9

to the very core of procedural efficiency. The case cannot go forward if that information is insufficient.

{¶ 30} In this case, however, the information given was sufficient to trigger notice to the school board. CEI claimed overvaluation of "at least $50,000," well over the amount necessary for notice to be given. The local school board responded within the statutorily mandated thirty days.

{¶ 31} To comply with the core of procedural efficiency does not require that a complainant prove his case within the complaint. Indeed, R.C. 5715.19(G) requires that the complainant must "provide to the board of revision all information or evidence within his knowledge or possession that affects the real property that is the subject of his complaint." The statute does not require that all that evidence be contained within the complaint itself.

{¶ 32} The determination of a claim is to be made in an efficient manner. The statute is clear on the earmarks of that efficiency—a filing by March 31, a statement of whether the claimed valuation is at least $17,500, notice to school boards if the amount is at least $17,500, a thirty-day response time by the objecting party, and a ninety-day time limit to determine the claim. This court has also determined that the questions on the *Stanjim* form also go to the core of procedural efficiency; this court said that the form "is meant to expedite orderly administrative process." *Stanjim*, 38 Ohio St.2d at 236, 67 O.O.2d at 298, 313 N.E.2d at 16. As stated above, CEI responded satisfactorily to the questions remaining from that form.

{¶ 33} We find that any omissions CEI made on its DTE Form 1 complaint did not go to the core of procedural efficiency and that its responses met the requirements of R.C. 5715.13 and 5715.19. We accordingly reverse the decisions of the BTA.

*Decisions reversed.*

DOUGLAS, DICKINSON and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and F.E. SWEENEY, J., dissent.

RESNICK, J., not participating.

CLAIR E. DICKINSON, J., of the Ninth Appellate District, sitting for COOK, J.

––––––––––––––––––

**Moyer, C.J., dissenting.**

{¶ 34} I respectfully dissent. These causes should be resolved in accordance with the well-established precedent of *Stanjim Co. v. Mahoning Cty. Bd. of Revision* (1974), 38 Ohio St.2d 233, 67 O.O.3d 296, 313 N.E.2d 14, because *Stanjim* is consistent with controlling statutes, and because the facts underlying these causes are not substantively distinguishable from those in *Stanjim*.

{¶ 35} R.C. 5715.19(D) provides: "Each complaint *shall state the amount of overvaluation*, undervaluation, discriminatory valuation, illegal valuation, or incorrect classification or determination upon which the complaint is based." (Emphasis added.)

{¶ 36} R.C. 5715.13 provides: "The county board of revision shall not decrease any valuation complained of unless the party affected thereby or his agent makes and files with the board *a written application therefor, verified by oath, showing the facts upon which it is claimed such decrease should be made.*" (Emphasis added.)

{¶ 37} In *Stanjim*, we determined that "BTA Form 1 represents a lawful interpretation of the minimal, data requirements of R.C. 5715.19 and 5715.13" and held that a complaint that is not responsive to the questions posed on the form fails to establish jurisdiction in a board of revision. *Id.*, 38 Ohio St.2d at 236, 67 O.O.2d at 299, 313 N.E.2d at 16. See, also, *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision* (1975), 44 Ohio St.2d 13, 73 O.O.2d 83, 336 N.E.2d 433. More recently, in *Middleton v. Cuyahoga Cty. Bd. of Revision* (1996), 74 Ohio St.3d 226, 227, 658 N.E.2d 267, 268, we reaffirmed that "[c]omplainants must *fully comply* with R.C.

5715.19 and 5715.13 before a county board of revision may act on their claims." (Emphasis added.)

{¶ 38} It is true that former BTA Form 1, referred to in *Stanjim*, has been replaced by DTE Form 1. However, the differences between the two forms do not justify disregard of the substantive principles upon which the holding of *Stanjim* was based.

{¶ 39} DTE Form 1 indeed omits the "Pertinent Facts" section contained in the *Stanjim* form, and some of the information previously requested in BTA Form 1 is now obtainable from real property records of the county auditor. Nevertheless, whether portions of the information previously requested in BTA Form 1 are obtainable elsewhere or not, the requirements of R.C. 5715.13 remain. That statute clearly requires a verified application showing *facts* which demonstrate that a decrease in property assessment is justified.

{¶ 40} The statements contained in the complaints in these cases, which are equivalent to mere expression of opinion that the assessed value is at least $50,000 too high, simply do not satisfy the statutory requirement of R.C. 5715.13 of a written application "verified by oath, showing the facts upon which it is claimed such decrease should be made."

{¶ 41} The majority acknowledges that the complainants' responses to Questions 7 and 8 constitute unsupported expressions of mere opinion. However, rather than properly concluding that the complainants thereby failed to comply with the statutory mandate, the majority instead concludes that Question 8 of DTE Form 1 need not be answered at all, because it *solicits* the expression of opinion. We should construe DTE Form 1 in a manner consistent with R.C. 5715.13, rather than contrary to it. Moreover, even assuming that the language of the form might have been better formulated, a lack of precision in its language certainly cannot override the mandate established by statute.

**{¶ 42}** Question 7 on DTE Form 1 requires the complainant to set forth his or her *opinion* of the fair market value of the property. In the case at bar the complainants' response was "unknown at present." Because the complainants declared and swore that the form had been filled out in a "correct and complete" manner, we must accept that, at the time the complaints were filed, the complainants had no opinion as to the value of the subject property. Similarly, Question 8 on DTE Form 1 asks the complainant to explain the reasons why an increase or decrease in taxable value was justified. In responding "[t]o be determined," the complainants indicated that they could, at that time, provide *no* reasons why the assessed property value should be changed. The only factual response made to Question 7, beyond the current assessed total taxable value already known or available to the board of revision, was that the complainants sought a "decrease of at least $50,000" in that current assessed value.

**{¶ 43}** Because the amount of tax liability is directly correlated to the value of property, the complainants' responses to the questions on the form did little more than express the opinion that the current tax bills were too high and that the appropriate school boards should be notified of the complaints. These responses cannot be deemed complete, and do not constitute "full compliance" with DTE Form 1, as required by *Middleton* and *Stanjim*.

**{¶ 44}** Complainants acknowledge that they had notice of the challenged tax valuation as early as January 1995. Nevertheless, their complaints challenging that valuation were all signed on March 31, 1995—the day of the expiration of the statute of limitations. R.C. 5715.19(A). By giving the answers "unknown at present" and "To be determined," the taxpayers implied that the information solicited by the form would be provided at some unknown time in the future. In effect, the complainants thereby notified the board of revision that they intended to complete the complaints *after* the statutory filing deadline. If a taxpayer is not required to give responsive answers to the questions on DTE Form 1 at the time of filing, but is permitted to

complete the form after the expiration of the statute of limitations, then he or she is able in effect to circumvent the filing deadline. There simply is no statutory basis for filing, completing or amending a complaint in order to cure a jurisdictional defect after the filing deadline. The law that produces the result here, if applied to other statutory deadlines, would change a substantial amount of settled law of this state that is contrary to the principle established by the majority.

{¶ 45} I cannot accept the majority's contention that expression by a complainant of a ceiling of maximum true value satisfies the applicable requirements. Whether a taxpayer is bound by the opinion of value expressed in his complaint thereafter is irrelevant to the determination of whether the taxpayer fully complied with all requirements for perfecting the appeal. The Tax Commissioner is required by R.C. 5715.29 and 5715.30 to establish forms to be used to challenge real property valuations, and complainants are required by the precedent established in *Stanjim* to use them. These complainants simply did not observe the express directions preceding Question 7 that "[t]he complainant must set forth the amount of increase or decrease in taxable value that is sought." The statutes no more authorize complainants to pick and choose portions of the form to answer than they authorize complainants to pick the most convenient timing to provide required information.

{¶ 46} The majority suggests that the complainants' failure to respond to Question 7 should not be deemed jurisdictional in that the information sought to be elicited does not "go to the core of procedural efficiency," citing *Akron Std. Div. v. Lindley* (1984), 11 Ohio St.3d 10, 11 OBR 9, 462 N.E.2d 419. Again I disagree. Questions 7 and 8 ask the complainant to set forth the amount of overvaluation and the reasons why the assessed value is an overvaluation.

{¶ 47} When those reasons are omitted from the complaint the board of revision is provided with virtually no information upon which it may process the complaint. It gives the board and interested persons no notice of a complainant's rationale for complaining. If, on the contrary, the information is contained on the

complaint, a procedural course is set for the board of revision to follow. If the amount of the overvaluation is at least $17,500 of taxable value, the board knows to give the appropriate school board notice. The amount of the desired decrease will also provide information to the boards of revision to use in determining whether to call experts or other witnesses. R.C. 5715.10.

{¶ 48} Moreover, the majority fails to consider the negative effect such abbreviated responses may have on school boards or other property owners in determining whether to oppose reduction of assessed property values, in filing counter-complaints, and procuring evidence to be presented in opposition to reduction in valuation at the board of revision hearing. See R.C. 5715.19(B). I simply do not understand why this court would place school boards and property owners in that situation.

{¶ 49} If the answers provided by these complainants are deemed sufficient, then the complaint form could be further simplified by requiring a complainant to merely state that it wants a decrease in an amount which does or does not exceed $17,500. Such a form would ignore both the relevant statutes and the procedural needs of the board of revision and possible opponents.

{¶ 50} The board of revision dismissed the complaints for want of jurisdiction. On appeal the Board of Tax Appeals affirmed the board of revision's dismissal of the complaints pursuant to *Stanjim*. The majority has disregarded our statutory mandate to affirm decisions if "the decision of the board appealed from is reasonable and lawful." R.C. 5717.04. Because the decisions of the administrative boards, which relied on long-standing precedent, were both reasonable and lawful, they should be affirmed.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.

_____

APPENDIX

**[The Appendix, consisting of Exhibits A and B, has not been included in the Internet version of this case.]**