HARDY ET AL., APPELLANTS, *v.* DELAWARE COUNTY
BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Hardy v. Delaware Cty. Bd. of Revision,*
106 Ohio St.3d 359, 2005-Ohio-5319.]

(No. 2004–1417—Submitted August 23, 2005—Decided October 19, 2005.)

**Per Curiam.**

{¶ 1} The owners of five adjoining parcels of land in Delaware County challenge the county auditor's conclusion that the land did not qualify for a reduced property-tax rate for tax year 2002 under the Current Agricultural Use Value ("CAUV") program described in R.C. 5713.30 through 5713.99. The property in question—identified in the Delaware County Auditor's records as parcels numbered 419–130–01–001–000, 419–130–01–002–000, 419–130–01–003–000, 419–130–01–004–000, and 419–140–02–006–000—covers approximately 240 acres in the Delaware City School District.

{¶ 2} The county auditor's office inspected the property in August 2002 and concluded that the property was not being used for agricultural purposes. The property owners challenged that finding before the Delaware County Board of Revision, which denied the owners' claim.

{¶ 3} The property owners then appealed under R.C. 5717.01 to the Board of Tax Appeals ("BTA"). The BTA in turn affirmed the decision of the board of revision, finding that the property owners had failed "to establish that the use of

the parcels in 2002 met the standards necessary to obtain CAUV status." According to the BTA, there was "no evidence * * * of any commercial enterprise being conducted" on the property, and the property therefore did not qualify as "land devoted exclusively to agricultural use" under R.C. 5713.30(A).

{¶ 4} The landowners have now appealed as of right to this court. For the reasons that follow, we affirm the BTA's decision.

{¶ 5} "In reviewing decisions of the BTA, we determine whether the BTA's decision is reasonable and lawful." *Standards Testing Laboratories, Inc. v. Zaino*, 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 10. "It is not the function of this court to substitute its judgment for that of the BTA on factual issues," although any facts determined by the BTA "must be supported by sufficient probative evidence." *Bethesda Healthcare, Inc. v. Wilkins*, 101 Ohio St.3d 420, 2004-Ohio-1749, 806 N.E.2d 142, ¶ 18.

{¶ 6} Owners of land that is "devoted exclusively to agricultural use" may ask the county auditor "to value the land for real property tax purposes at the current value such land has for agricultural use." R.C. 5713.31. Land that covers "not less than ten acres" may qualify for this CAUV status if it is "devoted exclusively to commercial animal or poultry husbandry, aquaculture, apiculture, the production for a commercial purpose of timber, field crops, tobacco, fruits, vegetables, nursery stock, ornamental trees, sod, or flowers, or the growth of timber for a noncommercial purpose, if the land on which the timber is grown is contiguous to or part of a parcel of land under common ownership that is otherwise devoted exclusively to agricultural use." R.C. 5713.30(A)(1).

{¶ 7} That same statutory provision adds that real property may also qualify as land "devoted exclusively to agricultural use" if it is "devoted to and qualified for payments or other compensation under a land retirement or conservation program under an agreement with an agency of the federal government." Id.

{¶ 8} The property owners rely in this appeal on the latter provision. Their lawyer told the board of revision in 2003 that the property was "not being used for anything," and he indicated that this situation had existed for five years. The land nonetheless qualified for CAUV status in 2002, according to the landowners, because they had received "compensation under a land retirement or conservation program under an agreement with an agency of the federal government." Id. To support that claim, the landowners' attorney presented written documents at the BTA hearing purporting to show that the landowners had received payments during the years 1998 through 2003 under production-flexibility contracts with the U.S. Department of Agriculture.

{¶ 9} The BTA, however, was unconvinced. As the BTA noted, none of the property owners appeared before the BTA or the board of revision to testify about their receipt of compensation from the federal government. And the

property owners offered no specifics before the BTA about the federal land-conservation program that allegedly compensated them for leaving their land unused. The landowners' attorney simply offered a series of documents to the BTA purporting to show that the property was enrolled in a federal program. Citing that evidence alone, the property owners claim that their land was entitled to CAUV status for tax year 2002.

{¶ 10} "[T]he BTA possesses wide discretion in evaluating the weight of the evidence and the credibility of the witnesses that come before it." *Fawn Lake Apts. v. Cuyahoga Cty. Bd. of Revision* (1999), 85 Ohio St.3d 609, 613, 710 N.E.2d 681. It "may accept all, part, or none" of a witness's testimony. *Simmons v. Cuyahoga Cty. Bd. of Revision* (1998), 81 Ohio St.3d 47, 48, 689 N.E.2d 22. "We will not reverse the BTA's determination on credibility of witnesses and weight given to their testimony unless we find an abuse of * * * discretion." *Natl. Church Residence v. Licking Cty. Bd. of Revision* (1995), 73 Ohio St.3d 397, 398, 653 N.E.2d 240.

{¶ 11} The BTA did not abuse its discretion in this case, and its decision was both reasonable and lawful. The BTA concluded that the property owners presented insufficient evidence to establish that the federal program under which they had allegedly received payments was "one of the ones contemplated by the provisions of R.C. 5713.30." The BTA also faulted the property owners for offering "no testimony or evidence * * * detailing the specifics of the actual [federal] programs, including goals of the programs, requirements for partic-ipation, and the steps taken by the appellants to participate." Those findings are supported by the record before us.

{¶ 12} The documents presented by the property owners' attorney at the hearing refer to "market loss assistance" programs, "production flexibility" contracts, and "direct" and "counter-cyclical" payment yields, but no witness explained those terms or the federal programs in which the land was allegedly enrolled. The terms on the documents and the format in which the information on them appears—a dizzying array of charts showing computer-generated num-bers with occasional references to wheat, corn, and grass crops—are not readily decipherable to those unfamiliar with them. The property owners chose to offer no witnesses who could explain the documents, leaving the BTA to wade through them and attempt to figure out whether and how they might be connected to the kind of "land retirement or conservation program" contemplated by R.C. 5713.30(A)(1).

{¶ 13} The absence of witnesses on such a critical issue and the limited explanation that the property owners offered through their lawyer about the documents they presented could rightly have prompted the BTA to conclude that the property owners had not met their burden of showing their entitlement to

CAUV status for their land in tax year 2002. The BTA did admit the property owners' documents into evidence and allowed their attorney to discuss them at the hearing, but of course "statements of counsel are not evidence." *Corporate Exch. Buildings IV & V, L.P. v. Franklin Cty. Bd. of Revision* (1998), 82 Ohio St.3d 297, 299, 695 N.E.2d 743.

{¶ 14} We will not disturb the BTA's sound determination about the proper weight to be given to the property owners' documentary evidence or the significance of the owners' failure to offer any testimony about their alleged receipt of compensation from the federal government. As we have said, "[a] taxpayer * * * has the duty to prove his right to a reduction in value." *Renner v. Tuscarawas Cty. Bd. of Revision* (1991), 59 Ohio St.3d 142, 145, 572 N.E.2d 56. The property owners did not meet that burden in this case, and the decision of the BTA on this first issue is therefore affirmed.

{¶ 15} The property owners also argue that the county auditor failed to comply with the statutory deadline for notifying them about his decision to remove the property from CAUV status after his August 2002 inspection revealed that the property was not being used for agricultural purposes. The owners contend that the county auditor should have sent notices to them no later than the first Monday in August 2002. The notices in fact were dated August 23, 2002.

{¶ 16} R.C. 5713.30(B) lists several ways in which property formerly granted CAUV status—like the property at issue in this case—may lose that status. As the statute indicates, that change in status, called "conversion," may occur if the property owner fails to "file a renewal application under section 5713.31 of the Revised Code without good cause." R.C. 5713.30(B)(1). And conversion can also occur if the auditor determines that CAUV property for which a renewal application *has* been filed no longer "qualif[ies] as land devoted exclusively to agricultural use." R.C. 5713.30(B)(3).

{¶ 17} The record does not contain CAUV renewal applications from the property owners for tax year 2002, though the parties have proceeded in this appeal as if the property owners did in fact file those applications with the county auditor in 2002. What *is* in the record are copies of two letters dated August 23, 2002, that the county auditor's office sent to the property owners advising them that their property had been inspected and that it no longer qualified for CAUV status because there was "no current agricultural activity" on the property. The letters do not refer to renewal applications having been filed by the property owners for tax year 2002.

{¶ 18} The property owners rely on R.C. 5713.32 to support their claim that the auditor's letters to them were untimely. That statutory provision states:

{¶ 19} "Prior to the first Monday in August the county auditor shall notify, by certified mail, each person who filed an application or an amended application [for

CAUV status] under section 5713.31 of the Revised Code and whose land the auditor determines is not land devoted exclusively to agricultural use, of the reason for such determination." R.C. 5713.32.

{¶ 20} If, as the record in this case suggests, the property owners failed to file any R.C. 5713.31 renewal applications in 2002 seeking continued CAUV status for their land, then the county auditor had no duty to send notices to the owners under R.C. 5713.32 advising them of his decision to revoke CAUV status. Instead, the auditor was entitled to find that the land had been converted from CAUV status to nonagricultural uses by virtue of the owners' failure "to file a renewal application under section R.C. 5713.31 of the Revised Code." R.C. 5713.30(B)(1). According to R.C. 5713.35, the auditor's deadline for making this finding is "the second Monday in September." By sending letters to the property owners on August 23, 2002, the county auditor met that statutory deadline.

{¶ 21} If—despite the absence of any support in the record—we instead assume (as the BTA seems to have done) that the property owners did file renewal applications under R.C. 5713.31 seeking continued CAUV status for their property in 2002, then R.C. 5713.32 did impose certain duties upon the auditor. Under that latter provision, the auditor should have notified the property owners by certified mail "[p]rior to the first Monday in August" 2002 of his intention to remove their land from the agricultural-land tax list for that year. He did not do so.

{¶ 22} Yet, " '[a]s a general rule, a statute providing a time for the performance of an official duty will be construed as directory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure.' " *State ex rel. Ragozine v. Shaker*, 96 Ohio St.3d 201, 2002-Ohio-3992, 772 N.E.2d 1192, ¶ 13, quoting *State ex rel. Jones v. Farrar* (1946), 146 Ohio St. 467, 32 O.O. 542, 66 N.E.2d 531, paragraph three of the syllabus. The statute at issue in *Ragozine* said that a trial court "shall" hold a hearing within a specified number of days after the filing of a complaint seeking the removal of a public officer. Though a trial court had missed that statutory deadline, we concluded in *Ragozine* that the deadline in the statute was directory, not mandatory, and we found that the trial court's failure to meet the deadline did not deprive it of jurisdiction to hear the case.

{¶ 23} We reach a similar conclusion here. Although R.C. 5713.32 states that the auditor "shall" provide the notice described in that statute "[p]rior to the first Monday in August," the statute does not indicate any intent on the part of the General Assembly to restrict the ability of the county auditor to remove lands from CAUV status if the deadline is missed. Instead, the notice requirement in the statute is intended to give property owners sufficient time to challenge the

auditor's conclusion. That fact is evident from the last sentence of R.C. 5713.32 itself, which says that any complaints against an auditor's decision denying CAUV status for real property "may be made in the manner prescribed in section 5715.19 of the Revised Code."

{¶ 24} The property owners in this case did in fact file timely complaints for tax year 2002 in March 2003 with the county auditor as R.C. 5715.19(A)(1)(b) allows. As the BTA rightly explained, "No prejudice occurred from the notice given by the county auditor in this instance, albeit approximately two weeks late and by regular mail, as appellants received the notice in question and were given an opportunity to appear and present evidence before the board of revision." The auditor's late delivery of the notices did not adversely affect the property owners, and—like the BTA—we therefore decline to hold that the auditor's tardiness deprived him of the authority to send the letters that he did in late August 2002. But again, if—as the record suggests—the property owners never filed CAUV renewal applications for tax year 2002, R.C. 5713.32 and its deadline do not apply at all.

{¶ 25} Finally, the property owners contend that the notices sent to them by the auditor in August 2002 did not provide "the reasons for * * * the Auditor's determination" as required by R.C. 5713.32. The BTA did not agree with them on this issue, and neither do we.

{¶ 26} The August 23, 2002 letters from the auditor to the property owners said that his officials had inspected the property the day before and had determined that the land did not qualify for CAUV status, "as there is no current agricultural activity on the property." That information was certainly sufficient to comply with the R.C. 5713.32 requirement that the auditor provide a "reason" for his determination that the property was "not land devoted exclusively to agricultural use." If the property owners disagreed with that determination, they could challenge it before the county board of revision, and here the owners did so. They bore the burden of proving their entitlement to CAUV status for their property and ultimately failed to meet that burden.

{¶ 27} The BTA's decision denying each of the appellant property owners' arguments was reasonable and lawful and was supported by the evidence in the record. That decision is therefore affirmed.

Decision affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.

O'DONNELL, J., dissents.

Ricketts Co., L.P.A., Richard T. Ricketts, and M. Brandon Teeples, for appellants.

Martin Hughes & Associates and Jackie Lynn Hager, for appellee Board of Education of the Delaware City School District.