BOARD OF EDUCATION OF THE MENTOR EXEMPTED VILLAGE SCHOOL DISTRICT, APPELLANT, *v.* BOARD OF REVISION OF LAKE COUNTY ET AL., APPELLEES.

[Cite as Bd. of Edn. v. Bd. of Revision (1979), 57 Ohio St. 2d 62.]

(No. 78-553—Decided March 14, 1979.)

*Gaines, Stern, Schwarzwald & Robiner Co., L. P. A.,* and *Mr. Donald M. Robiner,* for appellant.

*Robert J. DiCello Co., L. P. A.,* and *Mr. Robert J. Di-Cello,* for appellees Osborne.

PRYATEL, J.

## I.

Appellant's Proposition of Law No. 1 is as follows:

"Application form for current agricultural use valuation filed by one of two property owner-taxpayers is incomplete and defective and warrants dismissal and disqualification of the property for the current agricultural use valuation classification."

Although the application for current agricultural use valuation was submitted in the names of both Jerome and Georgeanne Osborne, only Mr. Osborne signed the application.[2] Mentor contends that the application was defective because it was not signed by Mrs. Osborne.

With respect to this question, R. C. 5713.31 provides:

"* * * *an owner* of agricultural land may file an application, on a form prescribed by the commissioner of tax equalization, with the county auditor of the county in which such land is located, requesting the auditor to value the

---

[2]Mr. Osborne explained that there was room for only one signature on the application.

land for real property tax purposes at the current value such land has for agricultural use, in accordance with rules adopted by the commissioner for the valuation of such land." (Emphasis added.)

The statute is clear and unambiguous. An "owner" may file an application for current agricultural use valuation. To dispel any doubt, R. C. 5713.30 defines the term "owner" as "*any person* owning a fee simple, fee tail, life estate, or a buyer on a land installment contract." (Emphasis added.) Thus, any person with the requisite ownership interest may sign the application. Accordingly, we find that Mentor's contention is not well taken.

Mentor also urges that the Osbornes' application was defective because it did not conform to the following portion of BTA Form 109 requiring the owners to explain why they did not file Internal Revenue Service Schedule F with their 1974 income tax return.

"Did you file a Schedule F with your Federal Income Tax Return last year? Yes.. No..x..

"If 'Yes' attach a copy of said schedule to this application. If 'No' on a separate sheet attach explanation as to why not."

Mentor cites *Griffith* v. *Bd. of Revision* (1975), 44 Ohio St. 2d 225; *Stanjim Co.* v. *Bd. of Revision* (1974), 38 Ohio St. 2d 233; *Martin Luther King, Jr., Plaza Corp.* v. *Cuyahoga Co. Bd. of Revision* (Board of Tax Appeals No. F-27, April 17, 1978), CCH Ohio Tax Reporter, Paragraph 200-184, and *Gerson* v. *Montgomery Co. Bd. of Revision* (Board of Tax Appeals No. E-1289, March 13, 1978), CCH Ohio Tax Reporter, Paragraph 200-174, for the proposition that applicants must strictly adhere to filing requirements when seeking a change in valuation.

Those cases are distinguishable from the case at bar in that data required by R. C. 5715.13 and 5715.19, which was necessary to invoke the jurisdiction of the board of revision in those cases was not furnished albeit necessary for the determination of the correct valuation. We are unable to see how an explanation relating to the failure to file Schedule F would aid in the determina-

tion of the current agricultural use value of property. Indeed, as appellees point out, BTA (now DTE) Form 109 no longer includes a reference to Schedule F nor does that schedule apply to income from sales of livestock held for draft, breeding, sport, or dairy purposes. Accordingly, we hold that the failure to explain why Schedule F was not filed with the Osbornes' 1974 income tax return did not invalidate their application. Appellant's first proposition of law is overruled.

## II.

Appellant's Proposition of Law No. 2 reads:

"The ownership and simultaneous dual use of unimproved real property, as a landbank immediately across the street from a major regional shopping center, by persons extensively engaged in the ownership, development and sale of commercial property in the immediate vicinity, is not consistent with an exclusive agricultural use nor the purpose and intent of the current agricultural use valuation classification."

The appellant challenges the propriety of the assessment under the current agricultural use valuation given its use and all the circumstances surrounding it, including: (a) its immediate proximity to a major commercial center; and (b) its ownership by individuals who are actively engaged in major commercial real estate development and sales.[3]

In support of its contention, appellant relies primarily upon language used in rules adopted by the Commissioner of Tax Equalization, 5705-5-01 and 5705-5-02, Ohio Adm. Code. That portion of Rule 5705-5-01(B)(2), which appellant cites as supporting its argument, states:

---

[3]The issue in this cause is whether the property in question should be classified as land used exclusively for agricultural purposes. The issue of what factors should be considered in determining its value once such a classification is approved is not before the court at this time. Appellant's attorney, Mr. Donald M. Robiner, stated, in his opening comments before the Board of Tax Appeals: "[I]n essence, our challenge is *not a valuation challenge* in the true sense of the word. *It is a legal challenge * *.* as to the propriety of the classification * * *.*" (Emphasis added.)

" 'Current Agricultural Use Value of Land' * * * It is the price at which the property would change hands on the open market between a willing buyer and seller, neither being under any compulsion to buy or sell, and both having knowledge of all relevant facts, if the highest and best use was *exclusively agricultural with no other influence being present* * * *." (Emphasis added.)

Appellant has completely misapplied the rule. This rule has nothing to do with whether the land is found to be "land devoted exclusively to agricultural use," in the first instance, pursuant to R. C. 5713.30(A). That portion of Rule 5705-5-01 cited by appellant deals only with the valuation of the land once it has been found to be "land devoted exclusively to agricultural use," as defined in R. C. 5713.30(A). Similarly, Rule 5705-5-02 cited by appellant concerns itself only with the valuation of the land.[4]

---

[4]Appellant draws attention to paragraphs **(A)** and **(F)** of Rule 5705-5-02, Ohio Adm. Code. However, the entire rule is devoted to the method of valuing the property once it has been determined by the county auditor to be land devoted exclusively to agricultural use. The rule has nothing to do whatever with the classification of the property in the first instance.

Likewise, appellant's reliance on R. C. 5715.01 is misplaced. That section is concerned with the assessment of real property, rules and procedure, and with the county board of revision. It states that the Commissioner of Tax Equalization shall promulgate rules for the determination of true value and taxable value of real property. Specifically, it directs the commissioner to promulgate rules prescribing the method for determining the current agricultural use value of land devoted exclusively to agriculture. Clearly, the statute is directed at requiring the commissioner to establish a uniform system of establishing "value" once the property is determined by the county auditor, upon application by an owner, to be used exclusively for agricultural purposes.

It is true that the intent of the constitutional amendment was to give relief to farmers whose land was slowly being engulfed by commercial land through the growth of towns and cities and who were being driven out of business by the soaring real property taxes attendant upon revaluation of their property under the "highest and best use" rule. Admittedly, the landowners herein do not fit cleanly into this category, however, the approach of the appellant would require a determination of the subjective motive of every person applying for the

Section 36, Article II of the Ohio Constitution, adopted to encourage agricultural development, provides:

"Laws may be passed to encourage forestry and agriculture, and to that end areas devoted exclusively to forestry may be exempted, in whole or in part, from taxation. Notwithstanding the provisions of section 2 of Article XII, *laws may be passed to provide that land devoted exclusively to agricultural use be valued for real property tax purposes at the current value such land has for such agricultural use.* * * *" (Emphasis added.)

Pursuant to this mandate, the General Assembly enacted R. C. 5713.31, which authorizes property "devoted exclusively to agricultural use" to be valued for property tax purposes *at the current value such land has for agricultural use.* R. C. 5713.30(A)(1) defines "[l]and devoted exclusively to agricultural use," in pertinent part, as follows:

"* * * [P]arcels of land totaling not less than thirty acres which * * * were devoted exclusively to commercial animal or poultry husbandry, the production for a com-

---

benefits of R. C. Chapter 5713. The results would not comport with the concepts of due process and equal protection of the laws.

Both the drafters of the Constitution and the General Assembly were aware of the possibility of abuse of this provision by speculators (which is obviously the appellant's fear) by providing for recoupment of tax savings. R. C. 5713.34 provides:

"Upon the conversion of all or any portion of a tract, lot, or parcel of land devoted exclusively to agricultural use a portion of the tax savings upon such converted land shall be recouped as provided for by Section 36, Article II, Ohio Constitution, by levying a charge on such land in an amount equal to the amount of the tax savings on the converted land during the four tax years immediately preceding the year in which the conversion occurs. The charge shall constitute a lien of the state upon such converted land as of the first day of January of the tax year in which the charge is levied and shall continue until discharged as provided by law."

If the landowners convert the property, as defined in R. C. 5713.-30(B), the tax savings will be recouped for the four tax years preceding the conversion. In this cause, the amount of that recoupment would be considerable, approaching something close to a half-million dollars.

mercial purpose of field crops, tobacco, fruits, vegetables, timber, nursery stock, ornamental trees, sod, or flowers or that were devoted to and qualified for payments or other compensation under a land retirement or conservation program under an agreement with an agency of the federal government.''

The wording of this section is straightforward and its meaning is clear. It is undisputed that the property is used to graze and breed race horses and to grow soybeans, wheat, clover and alfalfa. The board held, and we agree, that this use falls within the definition of land devoted exclusively to agricultural use as defined by R. C. 5713.30(A). If the land is used exclusively for animal husbandry and, or, the production of commercial crops, then the property qualifies for real property tax valuation purposes at the current value such land has for such agricultural use.[5] Accordingly, appellees' property which is used solely to graze and breed race horses and to grow commercial crops is "[l]and devoted exclusively to agricultural use," as defined in R. C. 5713.30(A).

Accordingly, the decision of the Board of Tax Appeals is affirmed.

*Decision affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, CONNORS, SWEENEY and HOLMES, JJ., concur.

CONNORS, J., of the Sixth Appellate District, sitting for P. BROWN, J.

PRYATEL, J., of the Eighth Appellate District, sitting for LOCHER, J.

---

[5]"Of course, an owner does not automatically qualify. An owner must file an application, pursuant to R. C. 5713.31. That section then requires the county auditor to determine if the land is devoted exclusively to agricultural use. If he does so find, he is then required to "appraise it for real property tax purposes in accordance with rules adopted by the commissioner for valuation of land devoted exclusively to agricultural use * * *."