**WETLAND RESOURCE CENTER, L.L.C., Appellee,**

v.

**MARION COUNTY AUDITOR, et al., Appellants.**

[Cite as *Wetland Resource Ctr., L.L.C. v. Marion Cty. Aud.*, 157 Ohio App.3d 203, 2004-Ohio-2470.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9-03-51.

Decided May 17, 2004.

204

Kevin R. Hall, for appellee.

Susan M. Bruder, Marion County Assistant Prosecuting Attorney, for appellants.

CUPP, Judge.

{¶ 1} Defendants–Appellants, the Marion County Auditor and the Marion County Board of Revision, appeal from a judgment of the Marion County Common Pleas Court, finding that plaintiff–appellee, Wetlands Resource Center, LLC ("WRC"), qualified for a reduced tax valuation under the current agricultural use valuation statute ("CAUV"), R.C. 5713.30 et seq. Appellants contend that the trial court wrongfully interpreted R.C. 5713.30(A)(1) to include, within the definition of "land devoted exclusively to agricultural use," federal conservation programs under which the landowner receives governmentally authorized private compensation. We disagree with appellants' interpretation of R.C. 5713.30(A)(1) and affirm the decision of the trial court.

{¶ 2} In March 1999, WRC acquired 467.596 acres of farmland located in Marion County, Ohio. At the time of acquisition, the land had qualified for

reduced tax valuation pursuant to CAUV for at least the previous three years. WRC intended to convert the farmland into a wetland mitigation bank and participate in a federal conservation program designed to offset the destruction of wetlands.

{¶ 3} The Clean Water Act regulates the unauthorized destruction or development of certain areas considered as protected as wetlands. Section 1344, Title 33, U.S.Code. However, some displacement of wetlands is recognized as unavoidable. To mitigate the destruction of wetlands, Congress authorized the development of pertinent federal conservation programs. Section 1301, Title 16, U.S.Code. A wetland mitigation bank is an example of one of these federally authorized conservation programs.

{¶ 4} The essence of a wetland mitigation bank is the conversion of privately owned land into wetlands under an agreement between the private landowner and representatives from several federal agencies comprising a Mitigation Bank Review Team. Once the land has been converted into wetlands and receives governmental approval, the land becomes a wetland mitigation bank and the owner of the bank can begin to sell credits to approved developers. Each credit from the wetland mitigation bank corresponds to a predetermined amount of wetland acreage. Developers can buy these credits and use them as offsets against wetlands that are unavoidably destroyed in their development activity. The number and availability of credits per wetland mitigation bank is regulated by the Army Corps of Engineers. Which wetland mitigation banks developers are allowed to purchase credits from is also regulated, but the price of each credit is left up to the private parties themselves. Wetland mitigation banks help to offset the unavoidable environmental impact caused by the destruction of wetlands during construction and development. See, generally, 60 FR 58605.

{¶ 5} Herein, WRC created a wetlands mitigation bank in compliance with the federal requirements and received authorization to begin selling credits to approved developers. Thereafter, WRC filed an application with the Marion County Auditor, seeking to continue the valuation of its land under CAUV. CAUV permits land that is "devoted exclusively to agricultural use" to be valued for tax purposes at its agricultural use rather than its highest and best use. R.C. 5713.31. This generally results in lower taxes than valuing the land at its market value. *Renner v. Tuscarawas Cty. Bd. of Revision* (1991), 59 Ohio St.3d 142, 572 N.E.2d 56. However, if the land loses its status as exclusively devoted to agricultural use, then the land becomes ineligible for the CAUV valuation and a recoupment is levied against the current landowner in the amount of the tax savings the land enjoyed over the previous three tax years. R.C. 5713.34(A)(1).

{¶ 6} WRC's application for tax valuation under CAUV was denied by the Marion County Auditor on the grounds that the use of the land as a wetland

mitigation bank did not meet the statutory definition of "land devoted exclusively to agricultural use." The basis of this decision was the fact that WRC would not receive any payment or compensation directly from an agency of the federal government, but rather from private entities. Based on its decision to deny WRC the CAUV classification for the year 2000, the auditor ordered recoupment of the savings the land had enjoyed the previous three tax years of 1999, 1998, and 1997. The total amount of recoupment ordered was $12,598.58.

{¶ 7} WRC filed an appeal with the Marion County Board of Revision seeking a reversal of the auditor's decision. The board of revision held hearings and affirmed the decision of the auditor denying WRC a tax valuation under CAUV. WRC appealed from this decision to the trial court herein. The matter was submitted on the transcript and record from WRC's previous appeal before the board of revision. The trial court overruled the auditor's decision, finding that wetland mitigation banks fit within CAUV's statutory definition of "land devoted exclusively to agricultural use." From this judgment appellants appeal, presenting two assignments of error for our review.

## Assignment of Error I

"The common pleas court erred in finding that mere participation in a 'conversion program under an agreement with an agency of the federal government' was sufficient under the language of R.C. 5713.30(A)(1) so as to include a private wetland mitigation bank, such as taxpayer, within the definition of 'land devoted exclusively to agricultural use' entitled to a reduction in taxes because of its inclusion in the CAUV program, without concurrent 'payments or other compensation under an agreement with an agency of the federal government.' "

## Assignment of Error II

"The common pleas court erred in its administrative review of the Marion County Board of Revision when it reversed the board of revision's decision in this matter and finding that taxpayer was entitled to CAUV classification."

{¶ 8} In both assignments of error, appellants contend that the trial court erred in its interpretation of R.C. 5713.30(A)(1).

{¶ 9} The CAUV statute enables landowners with "land devoted exclusively to agricultural use" to enjoy a generally reduced valuation of their land for taxation purposes. R.C. 5713.30 defines "land devoted exclusively to agricultural use" as:

"(1) Tracts, lots, or parcels of land totaling not less than ten acres that, during the three calendar years prior to the year in which application is filed under section 5713.31 of the Revised Code, and through the last day of May of such year, were devoted exclusively to commercial animal or poultry husbandry, aquaculture, apiculture, the production for a commercial purpose of timber,

field crops, tobacco, fruits, vegetables, nursery stock, ornamental trees, sod, or flowers, or the growth of timber for a noncommercial purpose, if the land on which the timber is grown is contiguous to or part of a parcel of land under common ownership that is otherwise devoted exclusively to agricultural use, *or were devoted to and qualified for payments or other compensation under a land retirement or conservation program under an agreement with an agency of the federal government.*" (Emphasis added.)

{¶ 10} It is undisputed that WRC has an agreement with a consortium of federal agencies to participate in a valid conservation program as a wetland mitigation bank. The contention herein is with the method by which WRC is compensated for its efforts. Appellants interpret the phrase "under a land retirement or conservation program under an agreement with an agency of the federal government" to mean that the compensation for the landowner's partic- ipation must come directly from the federal agency with which the landowner has the agreement. It is their contention that if the compensation does not come directly from the federal agency, then the land does not fall within the statutory definition of "land devoted exclusively to agricultural use" and the land does not qualify for CAUV treatment.

{¶ 11} WRC, on the other hand, contends that the phrase means only that the compensation is result of a conservation program authorized and controlled by an agreement with a federal agency. WRC asserts that the compensation need not be directly paid by the federal agency.

{¶ 12} The specific issue before us, then, is whether privately paid, but governmentally authorized, compensation fits within the statutory meaning of "payments or other compensation under a land retirement or conservation program under an agreement with an agency of the federal government" as used in R.C. 5713.30(A)(1). We hold that, under the factual circumstances before us, it does.

{¶ 13} CAUV is a tax exception allowing land to be taxed at its agricultural use rather than its highest and best use. Statutes relating to exception from taxation are to be strictly construed. *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 47 O.O. 313, 105 N.E.2d 648, at paragraph two of the syllabus. Because the reduction in taxes depends on legislative grace, the statute must clearly express the exception. *In re Estate of Roberts* (2002), 94 Ohio St.3d 311, 314, 762 N.E.2d 1001. However, if the language of the statute clearly and plainly expresses an intention of the legislature, that intention should be followed by the courts. *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, at ¶ 12. The Ohio Supreme Court has analyzed the language of R.C. 5713.30(A)(1) and found that "[t]he wording of this section is straightforward and its meaning is clear." *Mentor Exempted Village School Dist. Bd. of Edn. v. Lake Cty. Bd. of Revision* (1979), 57 Ohio St.2d 62, 68, 11 O.O.3d 220, 386 N.E.2d 1113.

{¶ 14} R.C. 5713.30(A)(1) requires that the conservation program qualify for payments or other compensation "under an agreement with an agency of the federal government." "Under" is defined as "[s]ubject to the authority, rule, or control of: *under a dictatorship;* or Subject to the supervision, instruction, or influence of: *under parental guidance.*" The American Heritage Dictionary of the English Language, Fourth Edition (2000). It is clear from this definition that a payment that is supervised, controlled, or influenced by an agreement with an agency of the federal government can be "under" that agreement without also being directly "from" a federal agency.

{¶ 15} WRC receives its compensation with the authority, control, and supervision of the Mitigation Bank Review Team, which consists of representatives from numerous federal agencies. Without the approval of the Review Team, WRC would not be authorized to sell wetland credits. Instead it would merely be the owner of a large tract of mostly unproductive wetlands. Not only must the wetlands be approved by the government prior to the sale of any credits, but the federal agencies also limit the total number of credits WRC's bank is permitted to sell. Furthermore, developers must get governmental consent in order to purchase credits from the wetland bank to offset the destroyed wetlands. The government also controls which wetland mitigation banks the developers may buy credits from.

{¶ 16} While the actual price of each wetland credit is not set by the federal agencies, the right to sell and buy the credits is closely monitored and controlled by the agencies. The fact that the government allows a small free market aspect to enter the selling of wetland credits does not change the fact that credits are created, sold, and distributed under the government's supervision and control. The right to receive any compensation at all from the selling of wetland credits arises under the agreement between the private landowner and agencies of the federal government.

{¶ 17} Under the facts of the matter presented to us herein, we hold that the compensation WRC receives by selling wetland credits to developers qualifies as "payments or other compensation under a land retirement or conservation program under an agreement with an agency of the federal government" within the meaning of R.C. 5713.30(A)(1). Accordingly, both of appellants' assignments of error are overruled, and the judgment of the trial court is affirmed.

{¶ 18} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

SHAW, P.J., and THOMAS F. BRYANT, J., concur.