OPINION
{¶ 1} Appellant, Andre Buckles, appeals from a judgment of the Franklin County Court of Common Pleas affirming a decision of the Franklin County Board of Revision ("the Board") excluding a property, parcel No. 025-003905 ("the property"), owned by *Page 2 
appellant from the Current Agricultural Use Valuation ("CAUV") program for the tax year 2005. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Appellant filed a CAUV renewal application with appellee, the Franklin County Auditor, for the property for tax year 2005. By letter dated November 30, 2005, the Franklin County Deputy Auditor, Mark Calhoun, informed appellant that the property was being removed from the CAUV program for tax year 2005. The letter indicates that the property was inspected in June and October 2005, and it conveys some of the observations that were made from those inspections. The letter states in part that the property "was not utilized for commercial agricultural purpose this year and does not qualify as `land devoted exclusively to agricultural use.' This is not consistent with the requirements of the CAUV Program and constitutes a conversion of agricultural land."
 {¶ 3} Appellant challenged the determination of the auditor by filing a "Complaint Against the Valuation of Real Estate" in March 2006. After a hearing on the merits of the complaint, the Board upheld the auditor's decision and denied the property CAUV status for tax year 2005. Appellant appealed the Board's decision to the Franklin County Court of Common Pleas.
 {¶ 4} On October 2, 2007, the trial court filed a decision affirming the Board's decision to deny CAUV status for the property for tax year 2005. The trial court resolved that the property was not devoted exclusively for agricultural use, and therefore, the Franklin County Auditor properly denied appellant's CAUV program renewal application. The court concluded that appellant had failed to establish by probative and competent evidence that the Board's decision was in error. On October 19, 2007, the trial court filed a judgment entry reflecting its October 2, 2007 decision. *Page 3 
 {¶ 5} Appellant appeals from the trial court's judgment and sets forth the following single assignment of error for our review:
 The Court of Common Pleas erred in requiring the appellant taxpayer to establish, in order to renew CAUV status under R.C. 5713.30(A)(1), that there was a "commercial agricultural commodity produced on the parcel" in the tax year 2005, when the undisputed evidence showed the taxpayer planted two separate crops in 2005, soybeans and wheat, but neither crop matured to harvest.
 {¶ 6} By his assignment of error, appellant contends that the trial court erred in affirming the Board's decision that appellant's property did not qualify for CAUV taxation status for the tax year 2005. Appellant argues that the trial court erred in finding that the property was not "land devoted exclusively to agricultural use" in 2005, as that term is statutorily defined.
 {¶ 7} As an alternative to an appeal to the Board of Tax Appeals pursuant to R.C. 5717.01, an appeal from a decision of a county board of revision may be taken directly to the appropriate court of common pleas. See R.C. 5717.05. While R.C. 5717.05 requires more than a mere review of the decision of the board of revision by the trial court, that review may be properly limited to a comprehensive consideration of existing evidence and, in the court's discretion, to an examination of additional evidence. Black v. Bd. of Revision (1985), 16 Ohio St.3d 11, 14. The court should consider all such evidence and determine the taxable value through its independent judgment. Id. In effect, R.C. 5717.05
contemplates a decision de novo, but does not provide for an original action or trial de novo. Id., citing Selig v. Bd. of Revision (1967), 12 Ohio App.2d 157, 165. The judgment of the trial court shall not be disturbed absent an abuse of discretion. Id. at syllabus. Therefore, an appellate court should not question the trial court's *Page 4 
judgment, unless such determination is unreasonable, arbitrary, or unconscionable. Id. at 14.
 {¶ 8} Effective January 1, 1974, Section 36, Article II of the Ohio Constitution was amended to create an exception to the constitutional requirement that all land and improvements thereon be taxed by uniform rule according to value. The amendment provided as follows: "Notwithstanding the provisions of Section 2 of Article XII, laws may be passed to provide that land devoted exclusively to agricultural use be valued for real property tax purposes at the current value such land has for such agricultural use." Am. H.J.R. No. 13, 135 Ohio Laws, Part I, 2043. In 1979, the Supreme Court of Ohio, in Bd. of Edn. v. Bd. ofRevision (1979), 57 Ohio St.2d 62, recognized that this provision was intended "to give relief to farmers whose land was slowly being engulfed by commercial land through the growth of towns and cities and who were being driven out of business by the soaring real property taxes attendant upon revaluation of their property under the `highest and best use' rule." Id. at 66, fn. 4. Moreover, in view of this amendment, the General Assembly enacted R.C. 5713.30 through 5713.37 in 1974. See Am. Sub. S.B. No. 423, 135 Ohio Laws, Part II, 341, 344.
 {¶ 9} R.C. 5713.31 authorizes the auditor to value "land devoted exclusively to agricultural use" for property tax purposes at the current value the land has for agricultural use in accordance with adopted rules. For a property totaling ten acres or larger, "land devoted exclusively to agricultural use" is currently defined to include property "devoted exclusively to * * * the production for a commercial purpose of timber, field crops, * * * or the growth of timber for a noncommercial purpose, if the land on which the timber is grown is contiguous to or part of a parcel of land under common ownership that is *Page 5 
otherwise devoted exclusively to agricultural use[.]" R.C.5713.30(A)(1). In addition, R.C. 5713.30(B) provides in part: "`[conversion of land devoted exclusively to agricultural use'" is defined to include "(3) [t]he failure of such land or portion thereof to qualify as land devoted exclusively to agricultural use for the current calendar year as requested by an application filed under such section[.]"
 {¶ 10} The property at issue in this appeal consists of approximately 122 acres of land and is located adjacent to Morrison Road in the city of Gahanna, near Interstate 270. The property had been part of a larger tract of land, which consisted of approximately 475 acres, owned by appellant or his family. The Buckles family had raised cattle and hogs on the land, in addition to harvesting field crops. Over time, parts of the land were either sold to developers or donated to the Gahanna-Jefferson School District, ultimately leaving approximately 122 acres of land. The property is in a developing area, and government officials asked appellant to donate at least part of the land for additional parkland and for a bridge to span I-270. Of the property's 122 acres, approximately 66 acres are in a wooded area. This appeal focuses on the activities on the remaining 56 acres of land.
 {¶ 11} Appellant, a farmer, who also owns a 2,700-acre farm, "Lower Glen Farm," in Madison County, testified that he hired Carl Hamman as his farm manager. Mr. Hamman has been a farmer since he graduated from The Ohio State University in 1977 with a degree in agriculture. Both appellant and Mr. Hamman testified that "Roundup ready" soybean seeds[1] were planted on the property in June 2005. The record demonstrates that the land was not tilled and the soybeans were planted through the use of a seed drill. Mr. Hamman testified that they expected a 30 to 35 bushel per acre yield *Page 6 
with the soybean crop, but the soybean crop was destroyed when Bill Potts, who was hired to apply Roundup for weed control, applied Roundup that was contaminated with an additional chemical. Mr. Hamman testified that Mr. Potts planted "winter wheat" in November 2005 as compensation for the destruction of the soybean crop, and that the winter wheat did not take root due to freezing and thawing conditions.
 {¶ 12} Franklin County Deputy Auditor, Mark Calhoun, physically inspected the property at various times beginning in 2002, and he made multiple visits to the property during 2005. Mr. Calhoun's February 20, 2007 report indicates that he found a dense mixture of grass and weeds growing on the property every year, and that no agricultural product was harvested from the property during the years of his inspections, 2002-2005. When Mr. Calhoun inspected the property on June 21, 2005, he determined that no planting had been done and no action had been taken to reduce or eliminate the flourishing grass cover. Similarly, at his July 6, 2005 inspection, Mr. Calhoun saw no changes to the property which would be consistent with commercial agricultural practices. At his July 12, 2005 inspection, Mr. Calhoun observed "a change to the property" because "it look[ed] like they had planted since the last time I had been there." (Tr. 76.) Mr. Calhoun returned to the property on July 18, 2005 and noticed someone applying a herbicide. Mr. Calhoun returned to the property on August 2, 2005 and observed the "soybeans dying." (Tr. 79.)
 {¶ 13} When asked at the hearing whether his observation on August 2, 2005 was consistent with the application of a herbicide that was too strong, Mr. Calhoun would not opine as to whether the herbicide killed the soybeans. Mr. Calhoun explained: "What I'm saying about this parcel in particular is that there is such a heavy weed and grass *Page 7 
competition on this parcel that you could plant anything into that, you could spray it with anything you want, and it is not going to out compete that cover crop, simply because that cover crop is so well established and has been so for so many years * * * that it has a dense canopy, and a — and a very wide root system that out competes everything you stick in there. That grass is alive, it's growing, and those soybeans never had a chance." (Tr. 80-81.) Based on his visits to the property, Mr. Calhoun determined that the property "is not being used for the commercial production of field crops" and recommended that the property be removed from the CAUV program for tax year 2005. (Feb. 20, 2007 Report.)
 {¶ 14} In its decision, the trial court recognized that appellant presented evidence that soybeans were planted on the property in June 2005 and wheat was planted in November 2005, and that it was undisputed that both crops failed. The trial court further recognized that the parties disputed whether the land was devoted exclusively to agricultural use for the tax year 2005. In resolving this dispute, the trial court analyzed the testimony of appellant, Mr. Hamman, and Mr. Calhoun.
 {¶ 15} Concerning the testimony of appellant and Mr. Hamman, the trial court found two particular statements that were made at the hearing before the Board to be significant. In describing the property, appellant testified that "it is unforgiving farmland, it's poor soils, it has poor drainage, that's — it's a difficulty producing a crop, but we put it in there every year." (Tr. 13.) Mr. Hamman described the property as follows: "The subject property is wet, it has floodplain, floodway, and is difficult to farm. It is a very, very bad soil type compared to the codemo [sic] soils at the Lower Glen Farm. * * * But it's still a farm, and we still try to farm it." (Tr. 25-26.) *Page 8 
 {¶ 16} The trial court viewed these statements as indicating that the property was "nearly incapable of yielding any type of crop, let alone a field crop that is to be sold for commercial purposes." (Oct. 2, 2007 Decision, at 5.) In connection with this observation, the trial court noted that there is no evidence in the record demonstrating that appellant took steps to improve the quality of the property by addressing such matters as the soil or drainage problems. The trial court resolved that it defies logic that an experienced farmer would continue to invest time, labor, and money to attempt to farm a property that was nearly incapable of yielding a crop to be sold commercially. The court concluded that "the only reason that Appellant made a feeble attempt to `farm' the property was as a pretense to qualify for the CAUV program to avoid paying more in taxes." (Oct. 2, 2007 Decision, at 5.)
 {¶ 17} Appellant argues that the trial court improperly assumed that he was required to present evidence demonstrating that he had taken steps to improve the quality of the property by addressing the parcel's deficiencies in such matters as soil quality and drainage. Appellant additionally argues that the General Assembly addressed concerns regarding the possible improper use of the CAUV program for tax avoidance purposes by including a minimum gross income requirement for parcels totaling less than ten acres, as well as authorizing recoupment of tax savings. According to appellant, the General Assembly has not placed any further restrictions concerning such matters as farming practices or property conditions. In addition, appellant argues that the failure of the crops in this case was for reasons beyond his control. In essence, appellant argues that the efforts placed into the property were such that the property must be considered *Page 9 
devoted exclusively to agricultural use, despite the end result as to the relative success of the crop.
 {¶ 18} Appellant is correct to the extent that he argues that the success of field crops on a property is not the dispositive issue as to whether a property qualifies for the CAUV program. In Barbee v.Testa (Mar. 31, 1994), Franklin App. No. 93APE08-1193, the owners of two parcels of land sought CAUV status for the parcels on the basis that, even though the parcels were not farmed due to flooding and drainage problems, it was their intent to farm the parcels during the years at issue. See id. This court determined that the property was not devoted to an agricultural use despite the stated intent of the owners. See id. Subsequently, this court decided Rocky Fork Hunt Country Club v.Testa (1995), 100 Ohio App.3d 570 ("Rocky Fork"), another case involving a dispute over whether a property qualified for the CAUV program. InRocky Fork, the property at issue had been plowed in anticipation of the planting of corn, but, due to heavy rains, no planting occurred. This court distinguished the Barbee case by noting that, while the property owners in Barbee asserted that it was their intention to farm the parcels, there was an absence of any activity to demonstrate that intention. See Rocky Fork. This court in Rocky Fork resolved that the property qualified for the CAUV program. See id. In view of RockyFork, it is clear that the fact that particular field crops may fail to yield a harvest capable of commercial sale does not necessarily show that the land was not devoted exclusively to the commercial production of a field crop. See id.
 {¶ 19} Even so, the trial court in this case did not resolve that the property did not qualify for the CAUV program simply because the crops failed. Furthermore, contrary to appellant's suggestion, the trial court did not find that a party must always demonstrate an *Page 10 
effort to improve the quality of the land in order for his or her property to qualify for CAUV status. As outlined above, the trial court viewed the statements of appellant and Mr. Hamman as showing that the property was nearly incapable of yielding a field crop capable of being sold commercially. The trial court reasoned that, despite the property's recognized deficiencies, appellant did not take steps to improve the likelihood of the property yielding a crop capable of being sold commercially. Thus, the trial court determined that appellant's argument, regarding circumstances affecting crop success that were beyond his control, might have some validity if he had taken steps to remedy the conditions that existed on the subject property.
 {¶ 20} We find this analysis logical, as the absence of any effort to improve the recognized deficiencies on the property reasonably belies an assertion that the purpose of farming activities on the property was to produce a crop worthy of commercial sale. Obviously, evidence of farming activities performed on a property would support a determination that the property qualifies as land devoted exclusively to agricultural use. However, if those farming activities are performed with virtually no expectation that a harvestable field crop will result, it would be reasonable to conclude that the purpose of the performance of those farming activities was not a "commercial purpose."
 {¶ 21} Appellant also seems to argue that the trial court erroneously found fault in the farming methods used on the property. Appellant contends that, if there is a requirement that the farming must meet a standard of commercial farming reasonableness, the property was farmed using the "no-till" process, which, according to Mr. Calhoun, is an accepted method of farming in Franklin County. Mr. Calhoun's February 20, 2007 report states that there are two types of "tillage" procedures practiced *Page 11 
in Franklin County, i.e., "conventional tillage" and "no-till." The report explains that conventional tillage is the most commonly practiced planting system in Franklin County and involves the turning and working of the soil, which is more labor intensive but prepares the seedbed for planting, incorporates old plant residue into the soil, and eliminates early season weed competition. The report further explains that no-till, which is an accepted practice, occurs when seeds are "cut" or "pushed" into the soil without any plowing. The report states that "every no-till planting system is accompanied by another form of weed control, usually chemical. Weeds are most commonly controlled using herbicides both before and after planting."
 {¶ 22} Indeed, evidence indicated that "no-till" planting is an acceptable method of planting, and that a seed drill was used to plant the soybean seeds. Evidence also indicated that there was an application of a herbicide after the planting. However, the evidence further demonstrated that the planting occurred despite an existing dense growth of weeds and grass that would compete with any developing field crop. Mr. Calhoun's testimony, which the trial court found credible, emphasized the significance of the established weed and grass growth on the property, and how that growth would hinder any field crop development. In Mr. Calhoun's view, the soybean crop "never had a chance" because the established weed and grass system had not been eliminated before the soybeans were planted.
 {¶ 23} Appellant dismisses Mr. Calhoun's statements concerning the dense growth of weeds and grass as simply "lay opinion," apparently implying that his statements should not have been considered because a sufficient foundation was not laid that would establish him as an expert. However, as a general rule, administrative agencies are not *Page 12 
bound by the strict rules of evidence applied in courts. Haley v. OhioState Dental Bd. (1982), 7 Ohio App.3d 1, 6. Furthermore, no evidence directly contradicted Mr. Calhoun's reasonable statements concerning the impact of the dense growth of weeds and grass on any attempt to farm the property.
 {¶ 24} Additionally, appellant challenges the trial court's reference to Mr. Calhoun's statements regarding observations as to the property that date back to 1996. Appellant argues that CAUV program eligibility is determined solely upon the use of the property during the pertinent year, and therefore, that any use on the property other than in 2005 is irrelevant to the analysis. According to appellant, referencing activities in prior years, during which the parcel qualified for CAUV program status, as support for denying CAUV status in 2005 is arbitrary, unreasonable, and unlawful. We disagree.
 {¶ 25} We find that it was not an abuse of discretion or unlawful for the trial court to cite Mr. Calhoun's references to visits to the property in previous years, as these observations provide a context for the situation that existed in 2005. Mr. Calhoun's report indicates that there had been concerns regarding the property since approximately 1996 due to repeated and complete crop failures and a lack of sufficient crop rotation. Mr. Calhoun's report details how he had observed a dense grass and weed cover every year since his inspection in 2002, and how that vegetation cover was thriving. It is clear from a review of Mr. Calhoun's report that he had significant concerns regarding the appropriateness of the property's CAUV status through 2004, but, as appellant notes, the property remained in the CAUV program. Even though the auditor allowed the property to remain in the CAUV program through 2004, despite these concerns, that fact did not *Page 13 
somehow preclude a determination in 2005 that the property was no longer eligible for CAUV status.
 {¶ 26} Lastly, we note that appellant alleged at oral argument before this court that the trial court erred in finding that the wooded portion of the property did not qualify for CAUV status because it incorrectly determined that it was his burden to prove that the timber in the wooded area was being raised for a commercial purpose. Notwithstanding the fact that appellant did not directly challenge in his appellate brief the trial court's determination as to the wooded area, this argument is unpersuasive. Under the current version of R.C. 5713.30(A)(1), it is not necessary for timber to be produced for a commercial purpose to qualify land for CAUV status, if the noncommercial timber land is contiguous to or part of a parcel of land under common ownership that is otherwise devoted exclusively to agricultural use. See Dircksen v. Greene Cty. Bd.of Rev., 109 Ohio St.3d 470, 2006-Ohio-2990. Here, the trial court found that the non-wooded area was not devoted exclusively to agricultural use. Consequently, it was not error for the trial court to find that the wooded area did not qualify for CAUV status.
 {¶ 27} Based on the foregoing, we conclude that the trial court did not abuse its discretion in affirming the Board's decision that the property was not entitled to CAUV status for tax year 2005. Accordingly, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BRYANT and FRENCH, JJ., concur.
T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] According to testimony at the hearing, "Roundup ready" soybean seeds are genetically engineered to withstand Roundup. *Page 1