FIFE ET AL., APPELLEES, *v*. GREENE COUNTY BOARD

OF REVISION ET AL., APPELLANTS.

[Cite as *Fife v. Greene Cty. Bd. of Revision*,

120 Ohio St.3d 442, 2008-Ohio-6786.]

*R.C. 5713.30 and 5713.31 – Current agricultural-use value – Commercial timber*

*production – Board of Tax Appeals' decision affirmed.*

(No. 2007-2213 — Submitted December 17, 2008 — Decided

December 30, 2008.)

APPEAL from the Board of Tax Appeals, No. 2006-V-783.

_____

**Per Curiam.**

{¶ 1} Appellants, Greene County Auditor and Greene County Board of Revision ("the county"), appeal from a decision of the Board of Tax Appeals ("BTA") in which the BTA reversed the board of revision and found that two parcels owned by the appellees, D. Mark Fife and Patricia Fife, qualified for current agricultural-use valuation ("CAUV") pursuant to R.C. 5713.30 and 5713.31. The two parcels at issue comprise 18.7 acres. Of these, the owners devote approximately one acre to their house and grounds and about three acres to pasture for grazing cattle.

{¶ 2} About 14.2 acres at the site are wooded, and the use of this land presents the central issue in this case: the Fifes insist over the county's objections that they devote the wooded area to the "production for a commercial purpose of timber" within the meaning of R.C. 5713.30(A)(1). The BTA agreed and reversed the board of revision's denial of CAUV status. On appeal, the county contends that the BTA erred by granting the preferred tax status where no recent

harvesting of timber has occurred. Because it is reasonable and lawful, we affirm the decision of the BTA.

**Background**

{¶ 3} In 1973, Ohio voters approved an amendment to Section 36, Article II of the Ohio Constitution that authorized the General Assembly to make an exception to the constitutional requirement of uniform property taxation. The amendment provided that "laws may be passed to provide that land devoted exclusively to agricultural use be valued for real property tax purposes at the current value such land has for such agricultural use." Am.H.J.R. No. 13, 135 Ohio Laws, Part I, 2043. The General Assembly implemented the amendment by enacting R.C. 5713.30 through 5713.37.

{¶ 4} Under the authorizing amendment and the implementing statutes, "the auditor disregards the highest and best use of the property and values the property according to its current agricultural use," a procedure that "usually results in a lower valuation and a lower real property tax." *Renner v. Tuscarawas Cty. Bd. of Revision* (1991), 59 Ohio St.3d 142, 572 N.E.2d 56. Once land has been determined to be "devoted exclusively to agricultural use," R.C. 5713.31 requires the county auditor to appraise the land in accordance with administrative rules adopted by the Tax Commissioner that prescribe the method for performing agricultural-use valuation.

{¶ 5} But this case involves the threshold determination: Did the Fifes demonstrate that their property was devoted exclusively to agricultural use for the 2005 application year? R.C. 5713.30(A) describes several paths by which property might attain CAUV status. Most directly pertinent is R.C. 5713.30(A)(1), under which land qualifies for the tax break if, during the last three calendar years and through May 31 of the application year, the property was "devoted exclusively to commercial animal * * * husbandry [or] * * * the production for a commercial purpose of timber * * *." The BTA concluded that

the continuous grazing on the open land and the activity in relation to the wooded portion qualified the property for the preferred tax status under this provision. The county contends that the Fifes, as a matter of law, failed to demonstrate the requisite "commercial purpose" in maintaining the woodland.

**Facts**

{¶ 6}  The Fifes acquired the two parcels at issue from Mr. Fife's father in 2003 and 2004.  Mr. Fife testified that his grandfather had used the wooded portion for timber production.  That use continued over the decades when Mr. Fife's father owned the property; the last harvest of trees occurred in 1998, in which Fife's father took down 85 trees, with a value of $8,000.

{¶ 7}  The property had previously enjoyed CAUV status during the elder Mr. Fife's ownership.  On February 10, 2005, the county auditor sent a notice to the Fifes stating that their purchase of the land triggered a redetermination whether the land still qualified for CAUV status.

{¶ 8}  The testimony before the board of revision and the BTA detailed extensive activity by the Fifes to maintain access to the trees, to cull timber, and to girdle undesirable trees.  The Fifes also met with a state forester and received a forestry plan specifically for their property.  The Fifes permitted a neighboring farmer to graze cattle on a three-acre fenced-in portion of the property for a fee of $500 annually.  The farmer had been renting the grazing rights for four years at the time of the May 17, 2006 hearing at the board of revision.

{¶ 9}  The BTA found that "there is ample, and unrebutted, evidence of activity taken to grow timber for commercial production for the three years prior to the 2005 application." *Fife v. Greene Cty. Bd. of Revision* (Nov. 2, 2007), BTA No. 2006-V-783, at 10.  Additionally, "the testimony and evidence support that the three acres of pasture have been actively and exclusively used for the grazing of cattle for more than three years prior to application."  Id.  Based on these

findings, the BTA found that the land use satisfied the criteria of R.C. 5713.30(A)(1) and granted CAUV status.[1]

**Analysis**

{¶ 10} In reviewing a decision of the BTA, we determine whether it is "reasonable and lawful." *Columbus City School Dist. Bd. of Edn. v. Zaino* (2001), 90 Ohio St.3d 496, 497, 739 N.E.2d 783. While we will not hesitate to reverse a decision that is based on an incorrect legal conclusion, we defer to the BTA's factual determinations if the record contains reliable and probative evidence to support them. *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 10, citing *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789, and *Am. Natl. Can Co. v. Tracy* (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.

{¶ 11} On appeal, the county advances three main contentions. However, these contentions are not well taken.

{¶ 12} First, the county asserts that the infrequency of harvesting of timber on the land bars the claim for CAUV status as a matter of law. Specifically, the county cites testimony showing that the last harvest occurred in 1998 and the next major harvest would not likely occur for another ten years from the time of the BTA hearing – a gap of 19 years between harvests. The county argues that this lapse of time without a harvest of trees ought to defeat the Fifes' claim.

{¶ 13} Citing previous decisions, the BTA acknowledged "[t]he difficulty in determining whether the land in question is being used for the commercial production of timber" because "it may take decades for a timber crop to mature to

---

1. As noted, the Fifes' house is on one of the parcels. In some instances, the portion of an agricultural parcel containing the farmhouse has been split from the land actually farmed. See *Lavery v. Summit Cty. Bd. of Revision* (Sept. 30, 2005), BTA No. 2004-K-578, 2005 WL 2600947, fn. 1. The BTA makes no mention of the effect of the house on CAUV status, and the county has not asserted any error in this regard.

a size and nature that can be commercially harvested." *Fife*, BTA No. 2006-V-783, at 7. Accordingly, the BTA applied its previous holding that "a modicum of activity designed to further the growth of timber for commercial purposes" must be discernible. Id. at 10. Moreover, the record supports the BTA's finding that the Fifes satisfied that standard through activity on the property that established the "commercial purpose" harbored by the owners.

{¶ 14} Second, the county points to the ambiguity of woodland maintenance: Does such activity indicate a "commercial purpose" or does it merely constitute sound conservation practice? The county advocates a bright-line test, whereby an owner would have to show a recent timber harvest or existing contracts to cut timber to qualify the property for CAUV status. This position is not well taken. The determination of commercial purpose constitutes a factual inquiry that the BTA must conduct on a case-by-case basis. The statute does not specify a bright-line test, and we decline the county's invitation to adopt one here. The county's remedy lies not in voicing its concerns to this court but rather in petitioning the General Assembly for a change in the applicable statutes.

{¶ 15} Third, the county asserts that even if the evidence sufficed to establish agricultural use as of the application year 2005, there is allegedly no evidence establishing the use during the requisite period of three prior years. Again, this position is not well taken. Although the Fifes acquired the property within the three-year period, their use merely continued the prior use of the property by Mr. Fife's father and grandfather. The statutes as currently written do not prohibit the continuation of agricultural-use status when a new generation takes over the operation of the family farm.

{¶ 16} Nor are we persuaded by the county's citation of other cases that have addressed CAUV issues. In *Rocky Fork Hunt & Country Club v. Testa* (1995), 100 Ohio App.3d 570, 654 N.E.2d 429, testimony of the landscape architect established that certain woodland acres owned by a country club were

5

not being developed for the "merchantable value of the woods, but for its health and vigor and the aesthetic value for club members." Id. at 576. No such testimony negates the owners' case here; indeed, the forestry stewardship plan in this case specifically recites the purpose of "commercial production of the timber resourses [sic]."

{¶ 17} Likewise, our recent decision in *Dircksen v. Greene Cty. Bd. of Revision*, 109 Ohio St.3d 470, 2006-Ohio-2990, 849 N.E.2d 20, provides no assistance to the county in this case, because *Dircksen* addressed a claim in which the bulk of the tract at issue was admittedly devoted to *noncommercial* timber. The owners in *Dircksen* attempted to obtain the tax break for the large wooded area on account of its contiguity with other agricultural land, but that other land (taken without regard to the adjacent woodland) comprised less than ten acres. In the present case, the BTA's findings establish that property consisting of more than ten contiguous acres satisfies the CAUV standards set forth in R.C. 5713.30(A)(1). As a result, *Dircksen* is simply not apposite.

**Conclusion**

{¶ 18} For all the foregoing reasons, the BTA acted reasonably and lawfully when it reversed the board of revision and ordered that CAUV tax status be granted to the Fifes. We therefore affirm the BTA's decision.

Decision affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Lester L. Ferguson, for appellees.

James R. Gorry, for appellants.

_____