[Cite as *Chagrin River Hardwood Co. v. Ashtabula Cty. Bd. of Revision*, 2017-Ohio-4122.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| CHAGRIN RIVER HARDWOOD CO., | : | **O P I N I O N** |
| | : | |
| | | **CASE NO. 2016-A-0042** |
| Appellant, | : | |
| - vs - | : | |
| ASHTABULA COUNTY BOARD OF REVISION, et al., | : | |
| Appellee. | : | |

Administrative Appeal from the Ashtabula County Court of Common Pleas, Case No. 2013 CV 00921.

Judgment: Affirmed.

*Matthew M. Nee*, Nee Law Firm, LLC, 26032 Detroit Road, Suite 5, Westlake, OH 44145 (For Appellant).

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Robert L. Herman*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Chagrin River Hardwood Co. ("Chagrin River"), appeals from the May 17, 2016 judgment of the Ashtabula County Court of Common Pleas, overruling

Chagrin River's administrative appeal and affirming the decision of appellee, Ashtabula County Board of Revision ("Board of Revision"), denying current agricultural use valuation for Chagrin River's parcels of land. In this appeal, Chagrin River asserts the trial court erred by applying a "use" rather than a "devoted to" standard alleging that it devoted its land exclusively to agriculture. Finding no error, we affirm.

{¶2} Chagrin River is the owner of several parcels of real property in Ashtabula County. Chagrin River is engaged in commercially growing and harvesting timber. Through the 1970s, Chagrin River regularly logged the subject property. Around that time, Chagrin River determined the property had been excessively harvested. As a result, Chagrin River discontinued logging on the property. Chagrin River recognized it would take 35 to 50 years to re-grow timber that would be sufficiently mature for commercial harvest.

{¶3} The parcels at issue have been taxed at a reduced tax valuation known as the current agricultural use value, since the CAUV program was created in 1973. For the 2012 tax year, the Ashtabula County Auditor denied Chagrin River's CAUV qualification. From the Auditor's point of view, Chagrin River, for a number of years, has not engaged in any physical activity on the property that would tend to prove that it was cultivating trees for commercial purposes.

{¶4} Chagrin River filed a taxpayer complaint regarding the valuation of certain real property. On August 19, 2013, the Board of Revision held a hearing on the complaint. The Board of Revision agreed with the Auditor and found that Chagrin River, for a number of years, has not engaged in any physical activity on the property that would tend to prove that it was cultivating trees for commercial purposes.

{¶5} On December 23, 2013, Chagrin River filed a complaint for an administrative appeal before the Ashtabula County Court of Common Pleas. A hearing was held on January 26, 2015. On May 17, 2016, the trial court overruled Chagrin River's administrative appeal and affirmed the Board of Revision's decision denying current agricultural use valuation for the various parcels of land. Chagrin River filed the instant appeal and asserts the following assignment of error:

{¶6} "The trial court erred by applying a 'use' rather than a 'devoted to' standard because Chagrin River devoted its land exclusively to agricultural use."

{¶7} Chagrin River presents two issues under its sole assignment of error:

{¶8} "[1.] Did the trial court err when it applied a 'use' standard, rather than a 'devoted to' standard?

{¶9} "[2.] Did Chagrin River comply with the Ohio Constitution and Ohio Revised Code Chapter 5713, regardless of whether the court applies a 'use' standard or a 'devoted to' standard?"

{¶10} As Chagrin River's issues are interrelated, we will address them together.

{¶11} The standard of review in this case is abuse of discretion. *See Wetland Preservation Ltd v. Corlett, CPA*, 11th Dist. Ashtabula No. 2011-A-0034, 2012-Ohio-3884, ¶17. Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto,* 112 Ohio St. 667, 676–678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

**{¶12}** A taxpayer who files a complaint regarding the valuation of certain real property bears the burden of proof before the board of revision. *See Snavely v. Erie Cty. Bd. of Rev.*, 78 Ohio St.3d 500, 503 (1997).

**{¶13}** "By a 1973 amendment to the state Constitution, Ohio voters authorized the General Assembly to depart from uniformity in valuing real property by permitting farms to be valued in accordance with their current agricultural use rather than their market value. Section 36, Article II, Ohio Constitution; 1973 House Joint Resolution 13, 135 Ohio Laws, Part I, 2043; see *Fife v. Greene Cty. Bd. of Revision,* 120 Ohio St.3d 442, 2008-Ohio-6786, * * *, ¶3. 'Under the authorizing amendment and the implementing statutes, "the auditor disregards the highest and best use of the property and values the property according to its current agricultural use," a procedure that "usually results in a lower valuation and a lower real property tax."' Id., ¶4, quoting *Renner v. Tuscarawas Cty. Bd. of Revision* (1991), 59 Ohio St.3d 142, 143, * * *." (Parallel citations omitted.) *Maralgate, L.L.C. v. Greene Cty. Bd. of Revision*, 130 Ohio St.3d 316, 2011-Ohio-5448, ¶13.

**{¶14}** The implementing legislation is set forth at R.C. 5713.30 et seq. Central to the resolution of the instant case is the definition of "land devoted exclusively to agricultural use" at R.C. 5713.30(A)(1)(a), which states in part:

**{¶15}** "(A) 'Land devoted exclusively to agricultural use' means:

**{¶16}** "(1) Tracts, lots, or parcels of land totaling not less than ten acres to which, during the three calendar years prior to the year in which application is filed under section 5713.31 of the Revised Code, and through the last day of May of such year, one or more of the following apply:

4

{¶17} "(a) The tracts, lots, or parcels of land were devoted exclusively to * * * the production for a commercial purpose of timber * * *."

{¶18} Thus, a careful reading of R.C. 5713.30(A)(1)(a) reveals three separate elements that must be satisfied before a tract, lot, or parcel may be deemed "devoted exclusively to agricultural use." The tract, lot, or parcel must: (1) not be less than ten acres; (2) be used exclusively for production for a commercial purpose; and (3) be devoted to the foregoing use during the three calendar years prior to the year in which application is filed and through the last day of May of that year.

{¶19} The only element in dispute in the case sub judice is whether the property at issue is devoted exclusively to the production of timber for a commercial purpose. Chagrin River asserts the trial court erred in affirming the Board of Revision's decision revoking its CAUV status by alleging that the court should not have considered the use of the property but rather Chagrin River's intent as the property owner. We disagree.

{¶20} The Ohio Supreme Court rejected the intent test in 1979. *See Bd. of Edn. of Mentor Exempted Village School Dist. v. Bd. of Revision of Lake Cty*, 57 Ohio St.2d 62, 66, fn.4 (1979) ("It is true that the intent of the constitutional amendment was to give relief to farmers whose land was slowly being engulfed by commercial land through the growth of towns and cities and who were being driven out of business by the soaring real property taxes attendant upon revaluation of their property under the 'highest and best use' rule. Admittedly, the landowners herein do not fit cleanly into this category, however, the approach of the appellant would require a determination of the subjective motive of every person applying for the benefits of R.C. Chapter 5713. The results would not comport with the concepts of due process and equal protection of the laws.")

{¶21} In addition, R.C. 5713.30 makes no reference to intent. Rather, as stated, R.C. 5713.30(A) references "'Land devoted exclusively to agricultural use." We perceive nothing in the statutory language suggesting it is ambiguous. Moreover, the Ohio Supreme Court has stated that "the wording of [R.C. 5713.30(A)(1)] is straightforward and its meaning is clear." *Bd. of Edn. of Mentor Exempted Village School Dist., supra,* at 68.

{¶22} Based on the foregoing, the trial court did not err in not applying an intent standard suggested by Chagrin River. The court instead properly followed the modicum of activity standard approved by the Ohio Supreme Court in affirming a decision of the Board of Revision. *Fife, supra.* Specifically, the Supreme Court held:

{¶23} "Citing previous decisions, the BTA acknowledged '(t)he difficulty in determining whether the land in question is being used for the commercial production of timber' because 'it may take decades for a timber crop to mature to a size and nature that can be commercially harvested.' *Fife,* BTA No. 2006–V–783, at 7. Accordingly, the BTA applied its previous holding that 'a modicum of activity designed to further the growth of timber for commercial purposes' must be discernible. Id. at 10. Moreover, the record supports the BTA's finding that the Fifes satisfied that standard through activity on the property that established the 'commercial purpose' harbored by the owners." *Id.* at ¶13.

{¶24} Unlike the facts in *Fife*, there is no evidence in the case at bar of any activity consistent with growing timber for commercial harvest within the three years leading up to the Auditor's decision to deny continued CAUV status to Chagrin River for the property at issue. *See* R.C. 5713.30(A)(1)(a). In fact, the record reveals that

nothing has been done to maintain the property for a decade or more. Chagrin River presented no evidence of recent commercial activity on the land.

{¶25} Chagrin River received notice in July 2012 asking for a woodland management plan in order to remain on CAUV status. Brad Childs and Tim Brewster, registered foresters, were later consulted in 2013. Childs determined the timber crop was harvestable but needed another 20 years to fully mature. Brewster believed it was closer to ten years. When Brewster viewed the land, it did not appear that any recent activity to maintain the property had occurred. An inspection of the property revealed an infestation of grapevines. Also, beaver dams and plants harmful to the timber were observed on the property. Thus, Brewster's plan called for grapevine control, destruction of beaver dams, and cutting of plants and trees that were dangerous to the growth of timber.

{¶26} In addition to Brewster's testimony, Chagrin River admitted to not actively maintaining the property. Chagrin River failed to demonstrate that a modicum of activity designed to further the growth of timber for commercial purpose was taking place. The land in question was not devoted exclusively to the production of commercial timber.

{¶27} The industry at issue does not allow the landowner to plant trees and merely leave them alone. Rather, R.C. 5713.30(A)(1)(a) is clear that a modicum of activity take place within the three year time period for land devoted exclusively to agricultural use. *See Fife, supra*. As stated, nothing has been done to maintain the property for a decade or more. Based on the facts presented, we find the trial court correctly applied and complied with the "use" standard under R.C. 5713.30(A)(1)(a) in affirming the Board of Revision's decision.

7

{¶28} For the foregoing reasons, appellant's sole assignment of error is without merit. The judgment of the Ashtabula County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, P.J.,

THOMAS R. WRIGHT, J.,

concur.